John Jacob Astor, Appellant, *v.* The Mayor, Aldermen
and Commonalty of the City of New York et al.,
Respondents.

The provision of the State Constitution (art. 1, § 7), providing that where
private property is taken for public use, the compensation therefor,
when "not made by the State, shall be ascertained by a jury or by not
less than three commissioners," does not, when three commissioners are
appointed to ascertain the compensation, require the concurrence of all.
When all are notified a majority may act, and in the absence of proof to
the contrary the giving of notice will be presumed.

In an action to set aside an assessment made under the act, "to alter the
map or plan of the city of New York" (chap. 890, Laws of 1869), it was
alleged that one of the commissioners of estimate and assessment was not
legally appointed, and had no jurisdiction to act ; also, that notice was
not given of the presentation of the petition, as required by the act of
1839 (§ 4, chap. 209, Laws of 1839). *Held,* that it was too late to raise
these objections after the confirmation of the commissioners' report ;
also, as to the last mentioned objection, that it was cured by the section
of the act of 1872 (§ 7, chap. 580, Laws of 1872), providing that no
assessment "for any local improvement or other public work shall be
vacated for any irregularity save in case of fraud."

Also, *held,* that the opening or enlarging a street was a local improve-
ment and public work within the meaning of said section; and that it
applied as well to an assessment for that purpose as to an assessment
laid after a street is actually opened.

*In re Arnold* (60 N. Y., 26) distinguished.

Said section is not unconstitutional.

(Argued June 9, 1875 ; decided September 28, 1875.)

Appeal from judgment of the General Term of the
Superior Court of the city of New York, entered upon an
order reversing a judgment in favor of plaintiff, entered upon
a decision of the court at Special Term, and directing judg-
ment absolute in favor of defendants. (Reported below, 7
J. & S., 120.)

This action was brought to restrain the collection of an
assessment upon certain lots of plaintiff in the city of New
York, and to have the record thereof canceled as a cloud upon
plaintiff's title.

The court found the following facts:

That pursuant to the provisions of the act of May 17, 1869 (Laws of 1869, chap. 890), Broadway was laid out by the commissioners therein named, and proceedings were had in the Supreme Court resulting in a report by commissioners of estimate and assessment, which was confirmed by that court in December, 1870. That thereafter, under an act passed February 27, 1871 (Laws of 1871, chap. 57), such proceedings were had that an order was made in said court on the 3d day of April, 1871, setting aside the report so confirmed, and appointing Alexander T. Stewart, John Q. Jones and James L. Hennessey commissioners of estimate and assessment, to amend and correct the report so set aside, and to make a new assessment in whole, both as to awards for damages and assessments for benefit, as they might deem proper. These commissioners took the oath of office and entered upon the discharge of their duties. On the 29th of May, 1871, Mr. Stewart resigned. On or about June 1, 1871, on motion of the counsel to the corporation, made without notice by publication or otherwise, an order was made in the Supreme Court appointing William E. Dodge commissioner in his place. Mr. Dodge declined to act, and on or about the 10th day of June, 1871, an order was made on a similar motion, without notice by publication or otherwise, revoking the order of June first, and appointing William Wood commissioner, who, on the 12th of June, 1871, took the oath of office and entered upon the discharge of his duties as one of the commissioners. The three commissioners held various meetings, and unanimously agreed upon an area for assessments. A majority, Jones and Wood, also agreed, against the opposition of Hennessey, upon the awards and the assessments; and the clerks were directed to complete the abstracts of damage and assessment, to deposit the same in the department of public works, and to publish the usual notice of the completing and filing of such abstracts. Upon the completion of the abstracts they were signed by Jones and Wood, as such commissioners, and filed, and

notice of such completion and filing was given by the publication of a notice purporting to have been signed by the three commissioners. But Hennessey had not signed the same, and his name had been affixed without consultation with or authority from him. He notified the clerk of the commission that he objected to this use of his name, and in consequence thereof his name was removed after a publication of two or three days, and the notice was thereupon published over the names of Jones and Wood only. This notice bears date August 15, 1871. It specified the limits embraced by the assessments, and announced that the report of the said two commissioners would be presented to the Supreme Court upon a further notice of twenty days, to be hereafter given in two daily newspapers, pursuant to the provisions of the fourth section of chapter 57 of the Laws of 1871; that all persons interested in said proceedings, or in any land affected thereby, and feeling aggrieved, might present their objections in writing, duly verified, on or before the 18th day of September, 1871, and that the said two commissioners would hear the parties so objecting within the ten week-days next after the said 18th day of September, 1871. Objections in writing to the report so proposed to be made were presented, and, among others, the plaintiff filed objections; and, among other things, objected to the jurisdiction of said two commissioners to make a report which would become binding upon his property. Subsequently, parties objecting were heard before the commissioners, and at some of the meetings for hearing objections the three commissioners were present. These meetings were held prior to the 5th of October, 1871. On and after the 5th October, 1871, twenty meetings were held for the purpose of considering and disposing of objections, the last meeting being held November twenty-fourth. On the twenty-fifth of November, and for twenty days thereafter, Jones and Wood, as such commissioners, published a notice to the effect that they had completed their estimate and assessment, and that on the 21st day of December, 1871, their report would

be presented to the Supreme Court for confirmation. On the 21st of December, 1871, Jones and Wood again met, Hennessey not being present. They examined the amended or final report which had been prepared pursuant to their directions, and without consulting or conferring with Hennessey, they affixed their signatures thereto and adjourned. Hennessey was not present at the meeting of the commissioners held October fifth, nor was he present at any meeting thereafter. He was not consulted as to the business transacted at these meetings, or any of them; nor was it proved that any notice of these meetings, or any of them, was received by him. The report, so signed by Jones and Wood, was, on the 21st of December, 1871, presented to the Supreme Court as the report of the commissioners. The plaintiff appeared and objected to the jurisdiction of the commissioners, on the ground of the appointment of Wood, without notice, and on the ground that the report was made by only two persons, one of the two being Mr. Wood; and also objected to the jurisdiction of the court to entertain or act upon a report made by two commissioners only. Upon the hearing had on such report, which took place June 3, 1872, Hennessey, without notice by publication or otherwise, presented a minority report, which he had prepared without notice to or consultation with the other two commissioners, and in which he dissented from the conclusions arrived at by the latter. The court referred the report made by Jones and Wood back to the commissioners for revisal and corrections; commanding the said two commissioners to return the report, so revised and corrected, to the court on the 24th of June, 1872. Subsequently, said two commissioners presented to the Supreme Court two amended reports, one dated June 29, 1872, and one dated July 5, 1872, and thereupon, and on the 5th of July, 1872, an order of confirmation of their report, as revised and corrected by their supplemental reports, was made, and said order was afterwards, on appeal to the General Term of the Supreme Court, affirmed. (63 Barb., 591.)

As conclusions of law, the court found that the assessments were not laid as required by law, and were void ; and that plaintiff was entitled to the relief demanded.   Judgment was entered accordingly.

*Henry H. Anderson* for the appellant.   Unless the provisions of the statute were strictly complied with in laying an assessment it is invalid.   (*Sharp* v. *Speir*, 4 Hill, 76 ; *Sharp* v. *Johnson*, id., 96, 99 ; *Striker* v. *Kelly*, 7 id., 24 ; *Cruger* v. *Dougherty*, 43 N. Y., 107 ; *In re Douglass*, 46 id., 42 ; *In re Comrs. Cent. Park*, 50 id., 493.)   The assessment being apparently a valid lien on plaintiff's land, he is entitled to relief in equity.   (*Scott* v. *Onderdonk*, 14 N. Y., 9 ; *Heywood* v. *City of Buffalo*, id., 534 ; *Ward* v. *Dewey*, 16 id., 519 ; *Allen* v. *City of Buffalo*, 39 id., 386 ; *Crooke* v. *Andrews*, 40 id., 547 ; 1 Laws 1871, p. 740, §§ 1, 4 ; *House* v. *City of Rochester*, 15 Barb., 517.)   Neither the commissioners nor the Supreme Court had jurisdiction either to make the awards or to lay the assessments therefor.   (1 Laws 1871, p. 92, § 4, p. 94 ; 2 Laws 1869, p. 2236 ; Laws 1839, chap. 209, p. 1222, §§ 2, 4, 9, 12, 13 ; 4 Hill, 76–90, 99, 103 ; *Doughty* v. *Hope*, 3 Den., 601 ; *In re Douglass*, 46 N. Y., 42, 45 ; 1 Bur., 447.)   The proceeding was fatally defective, the compensation having been ascertained by only two commissioners.   (Laws 1813 [Val. Laws], 1197, 1224, § 4 ; *In re Beekman*, 1 Abb. [N. S.], 451 ; *Doughty* v. *Hope*, 3 Den., 594 ; *Bd. Water Comrs.* v. *Lansing*, 45 N. Y., 19 ; *McDaniel* v. *Correll*, 19 Ill., 226, 228 ; *Horn* v. *Baltimore*, 26 Md., 194 ; *Lounsbury* v. *Potter*, 37 Supr. Ct., 51, 71 ; *In re Cent. Park*, 50 N. Y., 494, 495.)   The provisions of section 7 of chapter 580 of the Laws of 1872 have no application to proceedings for acquiring title to lands for streets.   (*People* v. *Kerr*, 27 N. Y., 188 ; Potter's Dwar. on Stat., 274 ; *In re Mayer*, 50 N. Y., 504.)   If chapter 580 of the Laws of 1872 interposed an obstacle to plaintiff's case it is unconstitutional. (*Wynehamer* v. *People*, 13 N. Y., 396 ; Fourteenth Amdt. Const. U. S. ; Laws 1871, chap. 381, § 1 ; Val. Laws, 1275 ;

*Cooke* v. *Andrews*, 40 N. Y., 550; 1 Blk. Com., 138; 2 Kent's Com., 320, 326; *Green* v. *Biddle*, 8 Wheat., 5.) The legislature could not take from the Superior Court the power to remove a cloud upon plaintiff's land. (Const., art. 6, § 12.)

*William Barnes* for the respondents. Plaintiff's action could not be maintained. (2 Wait's Pr., 7, 33; Hil. on Injunctions, 13, 15; Laws 1858, chap. 338, as amended 1874; 2 Laws 1872, chap. 580, § 7, p. 1416; *People* v. *City of Utica*, 65 Barb., 10; *Comstock* v. *Johnson*, 46 N. Y., 615; *Morewood* v. *Mayor, etc.*, 6 How. Pr., 389; 1 Wait's Pr., 24, 25; High on Injunctions, §§ 363, 364, 365; 15 Ohio, 64; 10 Mich., 248; 1 Cal., 455; 26 Ill., 351; *Mont. Co.* v. *Elston*, 32 Ind., 34; *Palmer* v. *Napoleon*, 16 Mich., 176; *People* v. *Com. Coun. of Utica*, 65 Barb., 10; *In re Comrs. Cent. Park*, 50 N. Y., 495, 496; *Miller's Case*, 12 Abb. Pr., 122; *Embury* v. *Conner*, 3 N. Y., 512; *Doty* v. *Brown*, 4 id., 71; *Castle* v. *Noyes*, 14 id., 329, 332; 1 Greenl. Ev., § 523; 5 Denio, 517.) It was not necessary that the action of the three commissioners of estimate and assessment, in making and signing the preliminary and final reports, should be concurrent or unanimous. (63 Barb., 519; *Water Comrs.* v. *Lansing*, 45 N. Y., 19; *Cruger* v. *H. R. R. R. Co.*, 12 id., 190; 49 Barb., 458; *Beekman's Case*, 1 Abb. [N. S.], 451; *Livingston* v. *Mayor, etc.*, 8 Wend., 102; *Beekman* v. *Sar. and Sche. R. R. Co.*, 3 Paige, 45; 11 Abb. Pr., 196; *Rex* v. *Whitaker*, 9 B. & C., 651.) The legal presumption is that Mr. Hennessy had notice, and that his associates performed properly their official duties in the premises. (*In re Phillips*, Supr. Ct.; *Sargent* v. *Webster*, 13 Met., 497; *Lane* v. *Brainard*, 30 Conn., 377; *Astor*, *Wm. B.*, v. *Mayor, etc.*, N. Y. Com. Pleas., 1875.) The assessment list entered in the comptroller's office under the provisions of section 7, chapter 580, Laws of 1872, and chapter 313, Laws of 1874, notwithstanding any defects, errors, omissions, etc., became a valid lien on the property benefited, and plaintiff cannot maintain this action. (*In re*

*Van Antwerp*, 1 T. & C., 423, 425 ; 55 N. Y., 261 ; *Mann* v. *City of Utica*, 44 How. Pr., 334 ; *In re Meyer*, 50 N. Y., 504 ; *Hepburn* v. *Curts*, 7 Watts [Penn.], 300 ; *Litchfield* v. *Vernon*, 41 N. Y., 124 ; *People* v. *Mitchell*, 35 id., 551 ; *Lennon* v. *Mayor, etc.*, 55 id., 361 ; *Dolan* v. *Mayor, etc.*, N. Y. C. Pl.)

MILLER, J. This action was a bill in equity to restrain the collection of an assessment upon plaintiff's lots, situate in the city of New York, under proceedings taken for the widening of Broadway. The proceedings are assailed upon various grounds, which, so far as material to the decision of the case, will be examined and considered.

An objection is made that the final report of the commissioners was signed by only two of them, and that the Constitution of the State requires the concurrence of all three of the commissioners. It appears that one of the commissioners dissented. Article 1, section 7, of the Constitution provides that when private property shall be taken for any public use, the compensation therefor, when "not made by the State, shall be ascertained by a jury or by not less than *three commissioners* appointed by a court of record as shall be prescribed by law." There is nothing in the section of the Constitution cited which requires the concurrence of all three of the commissioners, and in the absence of any express provision on the subject it is not to be presumed that any intention existed so to provide. If such was the case it would have been expressed in appropriate phraseology. In fact it would be extraordinary and unusual to place the entire control of a commission of this character in the power of a single member, who, perhaps without any reason whatever, or from mere willfulness and perversity, or from an improper motive, might render the entire proceedings nugatory. The authorities are quite uniform that in such cases where, a majority act and all are notified, it is sufficient, and the proceeding is valid. The cases bearing upon the question are examined in the opinion of the General Term upon the appeal from the order confirming the report of the commis-

sioners of assessment in this case, and further discussion is not required. (See 63 Barb., 591, and authorities there cited.)

The plaintiff also relies upon the fact alleged, that the report was made by two of the commissioners without any conference or consultation with the third. It does not appear that it was the fault of the two commissioners who signed the report that the third one did not unite with them. It appears that the commissioner who failed or neglected to sign the report took the oath of office, attended the meetings regularly for several months, charged the same fees as the other commissioners, and put in a dissenting report at the close of the proceeding, thus showing that he claimed to understand the nature of the business in which he was engaged, and had his own particular views in regard to the subject. It is also proven by the clerk of the board that he attended thirty-one of the seventy-six meetings which were actually held, and that notices were sent to him, of every meeting at which he was absent, by *special* messenger. This evidence is not as positive and direct, perhaps, as to establish actual personal service of notice; but this is not material, as the presumption is that due notice was given to the absent member until a want of notice is affirmatively shown. It was for the party objecting to show the alleged defect. (*In re Anderson*, MS. opin. this court, April, 1875.\*)

The court below found that although it was not proved that he was notified as to some of the meetings, including that at which the report was signed, it was not important, as the plaintiff was bound to establish he was not. And as his absence may account for his not being consulted, it is a fair assumption that the fault was with the delinquent commissioner and not with the majority. It was the duty of the dissenting commissioner to be present, to act and advise with his associates, and, if he voluntarily absented himself when he should have been present after notice, it is no ground for assailing the report of those who performed their duty. It would be an encouragement to official neglect of a duty vol-

\* 60 N. Y., 457.

untarily assumed, and lead to the most serious consequences, if one of a body of men, appointed to discharge public functions, could by his absence or by refusing to confer with his associates entirely set aside the action of the majority.

It is also urged that the report is from two of the commissioners, one of whom had no jurisdiction to act, his appointment being *ex parte* and a nullity. The commissioner who did not unite with the majority was appointed to fill a vacancy occasioned by the resignation of one of the commissioners. No provision is made by law for notice in such a case, although it is required upon the original application. (S. L. 1839, chap. 209, § 2; S. L. 1862, chap. 483, § 8.)

Without however discussing the question as to the legality of the appointment of this commissioner, it is sufficient to say that it is too late to raise the question after the report of the commissioners has been confirmed by a competent tribunal, upon the grounds discussed in the opinion of RAPALLO, J., in the case of *Dolan* v. *The Mayor*, recently decided in this court.* The last remarks are also applicable to the point made, that the omission to give notice of the presentation of the petition, required by section 4 of the act of 1839, was error. As to the last mentioned, as well as the other irregularities discussed, it may also be said that they are cured by the seventh section of chapter 580 of the Laws of 1872. (See also, S. L. 1874, chaps. 312, 313.) The seventh section of the act of 1872 enacts that no assessment "for any local improvement or other public work," shall be vacated or set aside for any "irregularity or technicality," except in cases where fraud shall be shown. This provision is broad and comprehensive and covers entirely all the irregularities which are claimed to exist in the case. There is no such want of authority or jurisdiction in the action, of the commissioners, as would present an exceptional case, which would sanction a disregard of its provisions. The effect of section 7 is, however, sought to be avoided upon the ground that it has no application to proceedings for acquiring title to lands for

* See *ante,* page 472.

streets, which it is claimed does not come within the term "local improvements or public works," and which latter phrase means assessments laid after streets are actually opened. This interpretation of the section cited cannot be sustained; and there is no provision in the act itself which thus circumscribes and limits its operation. If a street opening is not a local improvement or a public work, it is difficult to determine what terms are appropriate to define it. It is certainly local in fact, being confined to the corporate boundaries of a city; and cannot be properly said to be a general public improvement, divested entirely of any local characteristics. The property of the locality pays for it, and the citizens mainly enjoy the advantages to be derived from it. That it is a "public work," in which the community are more or less interested, cannot be questioned.

The learned counsel seeks to establish a distinction between proceedings for opening a street (2 Revised Laws of 1813, chap. 86, p. 342, §§ 177–192) and proceedings for regulating, grading and sewering streets (2 R. L. 1813, chap. 86, § 175; S. L. 1861, chap. 308); but there is no such difference as authorizes the conclusion that both of these classes of improvements are not embraced within the terms employed in the seventh section of the act of 1872.

In *The matter of Brown*, an unreported case in the Supreme Court, cited by the plaintiff's counsel, which arose upon a petition to vacate an assessment under chapter 338, Session Laws of 1858, some doubt is expressed whether a street opening was intended by the term "local improvement," but the question was not decided, and the case must have been disposed of upon another ground. *In re Arnold*, decided in this court,* which was a petition to vacate an assessment for widening a street, it was held that the act of 1858 (*supra*) had no application to an assessment made under the provisions of 2 Revised Laws of 1813, 409, as amended by chapter 906, Session Laws of 1862. Considerable stress is laid in the opinion upon section 5 of

* 60 N. Y., 26.

the act, as showing that it was not intended to include assessments made to pay for lands taken for streets, etc., but the decision does not dispose of the question now considered. In *In re Mayer* (50 N. Y., 504), it is said in the opinion of CHURCH, Ch. J., that the terms "other public works" refer to a class of improvements, and embrace those defined in section 4 of the act of 1872. But there is nothing in the phraseology or terms of the section referred to which would exclude an assessment for a street opening. The provision that bonds authorized under the act of 1852 may be issued in the same manner and with the same effect as if the improvement or work had been ordered to be done by contract, etc., does not militate against the interpretation given. This clause may have full force in its application to such cases without impairing its effect in cases of street openings. The provisions of section 5 of the act in relation to the making, entering and collection of assessments for local improvements may have full force and effect without in any way interfering with the construction already placed upon the seventh section. It is full and sufficiently comprehensive to cover all assessments made, whether completed or otherwise. The opening of a street may be completed as a public improvement or public work when the commissioners have determined lawfully to lay it out. The assessment made and the work to be done follow its completion.

The act was, no doubt, intended to meet some existing exigency and to provide a remedy for evils which had existed to a large extent, and which would be perfect, complete and controlling in all cases of assessments. Looking at the intention of the legislature, as we have a right to do in the construction of statutes, it is not to be supposed that the design was to limit and confine the operation and effect of the act to one class of cases alone. If it had meant the grading and regulation of the street alone, it is to be presumed that it would have so read and provided, and not have left it to be inferred, or to be found by a constrained and technical construction, that it was limited in this respect. It provided

against any assessment, and there is no reason why assessments for street openings, which comprise no inconsiderable portion of assessments in the city of New York, and are one of the most fruitful sources of contention and litigation in the courts, should be excluded from its operation. Any different interpretation would be adverse to the clear spirit of the lawmakers, and render the act ineffectual in guarding against the evils which it was evidently designed to avert. The conclusion is inevitable, that the act in question embraces assessments of the character presented by this case.

The claim that the act of 1872 is unconstitutional is not well founded. The power of the legislature over the subject of taxation is not restrained by any constitutional provision, and assessments for public improvements comprehend a mode of taxation which is under the control of the legislative power. There can be no doubt of the right to hold a lien upon lands for an assessment properly imposed.

Nor is there any force in the point made, that the legislature could not deprive the Superior Court of the power to remove a cloud upon the title of the plaintiff's land.

It may also be observed that the plaintiff has had his day in court, and presents no such case as calls for the interposition of its equitable power to protect his rights.

No other question arises which demands especial consideration. The judgment of the General Term must be affirmed.

All concur; except FOLGER, J., not voting.

Judgment affirmed.