HENRY G. YOUNG, Appellant, *v.* JACOB WENZ et al., Respondents.

THE CITY OF NEW YORK, Intervening.

Tax — foreclosure of tax lien — Gravesend (town of) — New York (city of) — when statutory requirement of notice of apportionment properly disregarded — board of assessors, not department of taxes and assessments, proper body to make assessments.

The plaintiff seeks in this action to foreclose a tax lien which he acquired by assignment from the city of New York. On examination of the statutes relating to local assessments in the town of Gravesend (L. 1892, ch. 118; L. 1893, ch. 171) together with sections 958, 959 and 960 of the charter of the city of New York (L. 1901, ch. 466), *held*, that the provisions of section 2 of the statute of 1893, requiring notice to be given of a meeting of the board of assessors

for the apportionment of amounts assessed for local improvements was something which the legislature could and did authorize the city of New York to disregard (charter, § 960), and that this section is applicable to the facts of this case since the lien of the city for taxes and assessments has been transferred to the plaintiff, and it retains in his hands all the qualities of a tax or assessment. The defense interposed by the defendants is a direct attack thereon, and contrary to section 960. *Held, further,* that the board of assessors of the city of New York, and not the department of taxes and assessments, was the proper body to make the assessment in this case.

*Young* v. *Wenz,* 166 App. Div. 937, reversed.

(Argued May 4, 1916; decided June 6, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 18, 1915, affirming a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lamar Hardy, Corporation Counsel (John B. Shanahan* and *Thomas F. Magner* for appellant. The provisions of section 2 of chapter 171, Laws of 1893, for the publication of notice of the time and place of the computation of the annual installment assessment was directory and not jurisdictional. That notice is not essential or even material. Sections 959–963 of the charter of the city of New York control in case either of error in making the computation or omission to publish the notice. (*Saranac L. & L. Co.* v. *Roberts,* 208 N. Y. 311; *Gillett* v. *City of Denver,* 21 Fed. Rep. 824; *Carson* v. *B. S. Comm.,* 182 U. S. 401; Cooley on Taxation [1st ed.], 213; *People ex rel. Pike* v. *Parker,* 86 Hun, 285; *Parish* v. *Golden,* 35 N. Y. 462; *Buffalo R. R. Co.* v. *Supervisors,* 48 N. Y. 93; *Lyth* v. *City of Buffalo,* 48 Hun, 179; *Albany R. R. Co.* v. *Town of Canaan,* 16 Barb. 250; *Spencer* v. *Merchant,* 100 N. Y. 585; 125 U. S. 345; *Genet* v. *City of Brooklyn,* 99 N. Y. 296; *Williams* v.

*Eggleston*, 170 U. S. 304.) The duty of making the annual installment assessments under section 2, chapter 171, Laws of 1893, devolved upon the board of assessors of the city of New York. (*People ex rel. Quinn* v. *Feitner*, 30 App. Div. 241; 156 N. Y. 694.)

*James A. Sheehan* for respondents. The duties in reference to the annual apportionments of the assessment for the Neptune avenue improvement, which under the provisions of chapter 171 of the Laws of 1893 were imposed upon the assessors of the town of Gravesend, upon the consolidation of the city of Brooklyn with the city of New York, devolved upon the department of taxes and assessments of the city of New York, and the board of assessors of the city of New York had no power in the premises. (*People ex rel. Quinn* v. *Feitner*, 30 App. Div. 241; *People ex rel. Dady* v. *Gravesend*, 154 N. Y. 381; *People* v. *City of Brooklyn*, 23 Barb. 180.) No valid installments were assessed against the premises described in the complaint during the years 1900 to 1908, both inclusive, for failure to observe the provisions of section 3 of chapter 171 of the Laws of 1893, requiring the assessing board to publish notice of the time and place when they would meet for the purpose of making the annual apportionment of assessment. (*Appeal of Spencer*, 78 Conn. 301; *Oakland Paving Co.* v. *Hilton*, 69 Cal. 479; *Hulbert* v. *Campbellsville Lumber Co.*, 191 U. S. 70; *Supervisors* v. *United States*, 4 Wall. 435; *Merritt* v. *Village of Portchester*, 71 N. Y. 309; *Queens Co. Water Co.* v. *Monroe*, 83 App. Div. 105; *Tifft* v. *City of Buffalo*, 25 App. Div. 373; *Matter of Burmeister*, 56 How. Pr. 416; *Sharp* v. *Spier*, 4 Hill, 76; *Gillett* v. *Dewer*, 21 Fed. Rep. 824; *City of Dubuque* v. *Woonton*, 28 Iowa, 571; *Carson* v. *B. S. Comm.*, 132 U. S. 401; Cooley on Taxn. [1st ed.] 213; *Stebbins* v. *Kay*, 123 N. Y. 31; *People ex rel. Pike* v. *Parker*, 86 Hun, 285; *Overing* v. *Foote*, 43 N. Y. 290.) Section 960 of the New York city

charter has no application to the assessments passed on in the case at bar and does not in any wise affect the respondents' right to dispute the validity of those assessments. (*Mayer* v. *Mayor*, 101 N. Y. 284; *Chase* v. *Chase*, 95 N. Y. 373; *People ex rel. Martin* v. *Myers*, 135 N. Y. 465; *Scudder* v. *Mayor, etc.*, 146 N. Y. 245; *Poth* v. *Mayor*, 151 N. Y. 16; *Matter of City of New York* [*In re Wharfage Rights Appurtenant to Old Pier 18*], 114 App. Div. 519; *Stuart* v. *Palmer*, 74 N. Y. 183.)

CUDDEBACK, J. The plaintiff seeks in this action to foreclose a tax lien which he acquired by assignment from the city of New York. By an amendment to the city charter made in 1908 (Ch. 490), taxes and assessments upon land in the city of New York are not enforced by a sale of the land upon which they are liens, but the right of the city to receive the tax or assessment is sold for the lowest rate of interest at which any person will take the same, and will advance the amount of the lien. A tax lien so transferred may be foreclosed the same as a mortgage upon real property.

The defendant Jacob Wenz is the owner of the land covered by the tax lien, and the other defendant is his wife. They have interposed a defense to the action, and the city of New York, under the provisions of section 1046 of the city charter, has intervened in the action to sustain the tax lien. The lien was for taxes levied in the years 1900–1908, and it included certain installment assessments imposed for the grading of Neptune avenue in the town of Gravesend, Kings county. It is alleged that such installment assessments are invalid for failure to advertise the same as required by law, and because they were not made by the proper city officers.

The question at issue involves the interpretation of chapter 118, Laws of 1892, passed March 10, 1892, and an amendatory act, chapter 171, Laws of 1893, passed March 22, 1893. These statutes relate solely to local

assessments in the town of Gravesend, and they deal (a) with assessments imposed before the passage of the first act, and (b) with assessments imposed afterwards. Chapter 118, Laws of 1892, provides that (Section 1) "as regards all unpaid assessments for local improvements heretofore levied in said town (Gravesend) exceeding on any one plot one hundred dollars each, it is provided that the same instead of being assessed, levied and collected as heretofore provided by law, shall not be deemed to have been assessed, or to be payable, except in and by the equal annual installments to be levied as herein directed."

The board of assessors of the town was required to divide every unpaid local assessment of more than one hundred dollars theretofore levied in the town, into forty installments, and to assess one of such installments with interest annually on the land originally assessed. The assessors were required to transmit a report of such assessment annually to the supervisor of the town, and he was required to present the same to the board of supervisors of the county. The board of supervisors was directed to include the installment in the annual tax levy of the town of Gravesend, and it was to be collected in the same manner as the annual taxes, with the same interest and charges.

The amendatory act of 1893 (Ch. 171) changed in many respects the proceedings to be taken with regard to these old assessments, and in that part of the statute which related to such assessments was placed the following requirement as to notice:

"Before the said board of assessors shall apportion and assess either of said forty installments as herein directed, the said board shall annually give at least four weeks' notice of the time and place when they will meet to make such annual apportionment and assessment, which notice shall be published in a newspaper published in the county of Kings once a week, commencing at least four weeks before such annual meeting shall be held by them, and

all parties interested in said lands to be affected by any such apportionment or assessment shall be entitled to be heard before said board upon the questions of such apportion-tionment and assessment."

As to all local assessments in the town of Gravesend, imposed after chapter 118, Laws of 1892, was passed, that statute said: "All the provisions of this act shall apply thereto," and further said: "Immediately upon the levy of any assessment, this act shall apply to the lien and collection thereof as to all lots assessed over one hundred dollars each, and the assessors shall forthwith proceed to apportion the amounts assessed into forty equal installments or parts, one of which with interest thereon shall be levied and collected annually in the manner and with the effect herein provided as to assessments unpaid, levied before this act." (Section 4.)

The assessment proceedings in the case under consideration were instituted in May or June, 1892, which was after chapter 118, Laws of 1892, was passed, and by the express direction of the board of supervisors the assessment was made and became a lien as provided in that act. It was, therefore, payable in forty yearly installments according to the provisions of the act. The assessment was confirmed, and became due and payable April 12, 1893, which was after the adoption of the amendment made by chapter 171, Laws of 1893, requiring that notice of the apportionment of the assessment be given by the board of assessors.

It was for the failure to give this notice of apportionment that the defendants attack the assessment. The corporation counsel argues in support of the tax lien that under section 960 of the charter (Laws of 1901, ch. 466) the failure to advertise was not fatal to the assessment. Section 960, which in substantially its present form has long been contained in the city charter (Laws of 1872, ch. 580, § 7), provides as follows:

"§ 960. No assessment heretofore made or imposed, or

which shall hereafter be made or imposed for any local improvement or other public work, already completed or now being made or performed, or which shall hereafter be made, done, or performed, shall hereafter be vacated or set aside for or by reason of any omission to advertise, or irregularity in advertising any ordinance, resolution, notice, or other proceeding relative to, or authorizing the improvement or work for which such assessment shall have been made or imposed, or for proposals to do the work, or for or by reason of the omission of any officer to perform any duty imposed upon him, or for or by reason of any defect in the authority of any department or officer upon whose action the assessment shall be in any manner or to any extent dependent, or for or by reason of any omission to comply with or carry out any detail of any law or ordinance, or for or by reason of any irregularity or technicality, except only in cases in which fraud shall be shown. * * * And all assessments for any such improvement or other public work shall be valid and binding notwithstanding any such omission, irregularity, defect in authority or technicality. * * *"

This section of the charter has often been before the courts, and its force and effect has been often declared. Its object was to afford relief from technical objections, " and the character of the irregularities specified, show that the intention was to guard against assessments being set aside for mere errors of form or technical irregularities or defects, but not to prevent redress in cases of substantial error." (*Matter of Emigrant I. Sav. Bank*, 75 N. Y. 388, 395; *Astor* v. *Mayor, etc., of N. Y.*, 62 N. Y. 580, 588.) The legislature did not intend by section 960 to dispense with any constitutional requirements necessary to authorize taxes or assessments. That would have been beyond its power. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Smith* v. *City of Buffalo*, 159 N. Y. 427, 432.)

Applying the rule as enunciated in these cases to the statutes relating to the apportionment of assessments in

the town of Gravesend into forty yearly installments, it would seem that as to all the assessments imposed after those statutes took effect, the provision for publishing notice of the apportionment was something that the legislature could authorize the city to disregard. As to those assessments which were imposed prior to the statutes, it might perhaps be that there was such a substantial change made in them by the enactments that notice of the change should be given. We do not say as to that.

The proceedings relating to the assessment for improving Neptune avenue according to the laws under which they were taken, provided abundant notice to the property owners. There was a final notice published for ten days, that the assessment had been confirmed, and that on certain days the commissioners would meet at a specified time and place for the purpose of receiving assessments. This notice was apparently published after the amendment by chapter 171, Laws of 1893, was made. During the course of the assessment proceedings there were also given the notices usual in such cases. There was a notice that the commissioners would meet at a certain place to make the assessment. Notice of the completion of the assessment and the filing thereof in the town clerk's office. Notice that the commissioners would meet at certain times to review the assessment and hear objections thereto, and that thereafter the assessment would be open for inspection, and that on a certain day an application would be made to confirm the same. It is difficult to see what useful purpose any further notice by the assessors could serve in this case, or in any case where the assessment was made after the passage of the statute of 1892. Those assessments were already divided into forty equal annual installments, and if the installments were not paid they could be added to the annual tax roll without further action of the assessors. Certainly there was no substantial error committed by the

failure to give further notice. "Where notice will avail nothing, no notice is required." (*Carson* v. *Brockton Sewerage Comn.*, 182 U. S. 398, 401; *Gillette* v. *City of Denver*, 21 Fed. Rep. 822, 824.)

The respondent argues that section 960 of the charter refers only to affirmative proceedings taken to annul assessments, and to establish that proposition he relies upon cases which have arisen under sections 958 and 959 of the charter. (*Lennon* v. *Mayor, etc., of N. Y.*, 55 N. Y. 361, 366; *Poth* v. *Mayor, etc., of N. Y.*, 151 N. Y. 16, 21.) Sections 958 and 959 provide that no action shall be commenced to vacate any assessment in the city, and that the owners of property shall be confined in their remedies in such cases to the proceedings under the charter. These sections do not apply to cases in which local assessments are only incidentally drawn in question, or in which the owner of property defends an attempt to deprive him thereof under the authority of the assessment. (Ib.)

Section 960 of the charter is an independent statutory provision, both in its origin and in its force and effect, in no way resting upon sections 958 and 959. It is a broad and general enactment regarding local assessments, and it controls whether the assessment is directly or collaterally attacked. Local assessments are declared to "be valid and binding notwithstanding any such omission, irregularity, defect in authority or technicality" as specified in the section. In the present case, under the system of taxation prevailing in New York city, the lien of the city for taxes and assessments has been simply transferred to the plaintiff, and it retains in his hands all the qualities of a tax or assessment, and the defense interposed by the defendants is a direct attack thereon, and contrary to section 960.

The assessment in question was apportioned and imposed by the board of assessors of the city of New York, and the defendants insist that the board of assessors was not the proper body to perform that function, and that the depart-

ment of taxes and assessments of the city alone had power to act. It will be noticed that chapter 118, Laws of 1892, and also the amendatory act of 1893 (Ch. 171) made it the duty of the board of assessors of the town of Gravesend to apportion the assessment. The town of Gravesend was annexed to the city of Brooklyn by chapter 449, Laws of 1894, and that act provides that the department of assessments of the city of Brooklyn should after the annexation .have charge of the assessment of lands and the preparation of lists of assessments for local improvements. The department of assessments constituted the board of assessors of the city of Brooklyn.

Then, by virtue of chapter 378, Laws of 1897, the city of Brooklyn and the city of New York were consolidated. It is reasonably plain that the duties of the assessors of the town of Gravesend devolved upon the department of assessments of the city of Brooklyn, but where they were bestowed when the city of Brooklyn and the city of .New York were consolidated is not so plain. Section 943 of the Greater New York charter provides for a board of assessors which "shall be charged with the duty of .making all assessments, other than those required by law to be confirmed by a court of record, for local improvements for which assessments may be legally imposed in ·any part of the city of New York."

The assessments contemplated by chapter 118, Laws of 1892, and chapter 171, Laws of 1893, were not required by law to be confirmed by a court of record. Those words in section 943 seem to have reference to assessments which accompany the exercise of the power of eminent domain under chapter 17, title 4 of the charter. They do not stand in the way of assigning to the board of assessors the duty of making the apportionment required by the act of 1892. There are certain provisions in the New York charter as to the manner in which the board of assessors shall make their assessments, which cannot be complied with in apportioning assessments under the

act of 1892. That, however, presents no great difficulty, because such provisions may be simply regarded as not applying to the case. The board of assessors must be governed in apportioning these assessments by chapter 118, Laws of 1892, and chapter 171, Laws of 1893, as well as by the charter, and the board must proceed as the successor of the taxing officers mentioned in those acts.

I think it should be held that the board of assessors of the city of New York and not the department of taxes and assessments was the proper body to make the assessment in this case.

The conclusion is that the judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CARDOZO, SEABURY and POUND, JJ., concur.

Judgment reversed, etc.