In the Matter of the Petition of JAMES A. DEERING, to Vacate an Assessment.

The power to regulate, grade and improve streets, given to the commissioners of the Central park by the act of 1865 (§ 8, chap. 565, Laws of 1865), providing for the laying out and improving of certain portions of the city and county of New York, is limited to streets laid out and opened by them under the act, and a confirmation of the report of commissioners of estimate and assessment appointed under the act, is made a condition precedent to the exercise of the power. (MILLER, J., dissenting.)

The provision of the act of 1866 in relation to the powers and duties of the commissioners of the Central park (§ 7, chap. 367, Laws of 1866), which confers upon said commissioners, in respect to streets required by law to be laid out or improved by them, the powers possessed by them in relation to Central park, and by the corporation of the city, and the several departments thereof in respect to other streets, applies only to improvements duly authorized, and does not add the power to improve, where a mere power to lay out had been previously given.

Accordingly *held*, that the jurisdiction to provide for and direct the grading and improving of Tenth avenue above One Hundred and Fifty-fifth street, in said city, which portion of said avenue had been laid out and opened prior to the passage of the act of 1865, was never vested in the commissioners of the Central park, and did not pass to their successors, the department of public parks or the department of public works, but remained and was vested in the common council; and that an assessment for grading and improving a portion of said avenue above One Hundred

SICKELS — VOL. XL.     1

and Fifty-fifth street, was void, the work having been done without a resolution or ordinance of the common council authorizing it. (MILLER, J., dissenting.)

(Submitted November 30, 1880; decided April 19, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, dated July 30, 1880, reversing an order of Special Term, which vacated an assessment upon a lot owned by petitioner, for regulating, grading, etc., Tenth avenue, in the city of New York, from One Hundred and Fifty-fifth to One Hundred and Ninety-fourth streets.

The work, for the expense of which the assessment in question was laid, was commenced in 1871, by and under a resolution of the department of public parks. One of the objections taken by the petitioner to the assessment was that there was no ordinance or resolution of the common council authorizing the work.

Further facts appear in the opinion.

*James A. Deering*, appellant, in person. The absence of any resolution and ordinance directing the improvement in question was a substantial and fundamental error, vitiating the assessment. (Chap. 86, Laws of 1813, § 176; Laws of 1870, chap. 137, § 12 *et seq.;* Laws of 1873, chap. 335, § 9 *et seq.; Matter of Tappan*, MS.; *Beekman's Case*, 11 Abb. Pr. 164.) The failure to advertise for proposals and contract for the work is a substantial error, vitiating the assessment; the statute being not only mandatory, but of positive prohibition. (Laws of 1861, chap. 308; Laws of 1870, chap. 137, § 104; Laws of 1873, chap. 235, § 91, p. 508; *Matter of Emigrant Ind. Sav. Bk.*, 75 N. Y. 388; *Matter of Trustees of Presbytery*, 57 How. Pr. 500; aff'd Ct. of App., March, 1880; *Matter of Newton*, id.; *Brady* v. *Mayor*, 20 N. Y. 312; *Donovan* v. *Mayor*, 33 id. 291; *Matter of Mahon*, Ct. of App., April, 1880.) The departments of public parks and public works had not jurisdiction to improve Tenth avenue in any manner whatever. (*People ex rel. Lasher* v. *McNeil*, 2

Sup. Ct. and T. & C. 140; *Garretson* v. *Clark*, Hill & Denio, 162; *Matter of Em. Ind. Sav. Bk.; chap. 697, Laws of 1867, § 6, as amended by § 5 of chap. 288, Laws of 1868.)   Chapter 565, Laws of 1865, and chapter 697, Laws of 1867, are unconstitutional. (Laws of 1857, vol. 2, p. 715; Laws of 1859, p. 857; Laws of 1861, p. 164; Laws of 1866, p. 822, § 8; Const., art. 10, § 2; *People* v. *Draper*, 15 N. Y. 532; *People* v. *Raymond*, Ct. of App., 1868; *People* v. *McKinney*, 52 id. 374; *People* v. *Albertson*, 55 id. 50; *Matter of Central Park*, 35 How. 275; *People* v. *Asten*, 48 Barb. 524; aff'd Ct. of App.) The charter of 1870 relegated to the common council the authority to initiate or cause the improvement of all streets in the city of New York. (Laws of 18  , chap. 137, vol. 1, p. 370, § 21; *Matter of Zborowski*, 68 N. Y. 88.) Neither the department of parks nor the common council had jurisdiction to improve the avenue, because the owners of a major part of the land, in lineal feet, fronting on the avenue, did not petition for the same. (Laws of 1860, chap. 201, § 5; *Sharp* v. *Johnson*, 4 Hill, 92; *Sharp* v. *Spier*, id. 76.) The department of public parks and works had not authority to dispense with a contract founded upon sealed bids and proposals after advertisement. (Laws of 1857, chap. 446, § 38; Laws of 1861, chap. 308; Laws of 1870, chap. 137; *Matter of Robbins*, Ct. of App., Sept. 21, 1880; Revised Ordinances, chap. 8.) A contract for the work or any part of it was never lawfully dispensed with either by the common council or the department of parks. (*Matter of Emigrant Ind. Sav. Bk.*, 75 N. Y. 388; *Birdsall* v. *Clarke*, 73 id. 73; *Matter of Trustees of N. Y. Presbytery*, 57 How. Pr. 500 ; *Matter of Newton* [N. Y. Supr. Ct.], id. ; *Thompson* v. *Schermerhorn*, 6 N. Y. 92; affirming *S. C.*, 9 Barb. 152; *Lyon* v. *Jerome*, 26 Wend. 484; Dillon on Mun. Corp., §§ 55, 60, 618 ; *Hydes* v. *Joyes*, 4 Bush [Ky.], 464; *Richardson* v. *Heydenfeldt*, 46 Cal. 68; *People* v. *Clark*, 47 id. 456; *Matter of Browne*, N. Y. Supr. Ct., G. T. 1867, MS., *St. Louis* v. *Clemens*, 43 Mo. 395; *Ruggles* v. *Collier*, id. 359; *Foss* v. *Chicago*, 56 Ill. 354; *Jenks* v. *Chicago*, id. ; *Kreuser* v. *Risbon*, 36 Cal. 239.)   The exemption by the

assessors of the several pieces of land fronting on the avenue, designated as " streets," from the assessment was erroneous. (*Matter of Prot. Ep. Pub. School*, MS., Ct. of Appeals, 1879 ; *Hassan* v. *Rochester*, 67 N. Y. 528; *Seaman* v. *Hicks*, 8 Paige, 656 ; *Corporation* v. *Mapes*, 6 Johns. Ch. 46 ; *Varrick* v. *Smith*, 5 Paige's Ch. 146 ; *Matter of Parade Ground*, 60 N. Y. 319 ; *Matter of Anthony St.*, 20 Wend. 618 ; *Matter of Canal St.*, 8 Barb. 505 ; Dillon on Mun. Corp., § 592 ; *Schuchardt* v. *The Mayor*, 62 Barb. 671 ; *People* v. *County Ct.*, 55 N. Y. 604.)   The confirmation of the assessments by the board of revision, and correction of assessment lists, did not strengthen or validate the assessment. (*Hassan* v. *Rochester*, 67 N. Y. 530; *Joyner* v. *Inhabitants*, 3 Carey, 567 ; *Chapman* v. *Brooklyn*, 40 N. Y. 372; *Salt Springs Nat. Bank* v. *Wheeler*, 48 id. 496 ; *Ireland* v. *Rochester*, 51 Barb. 414; *Dougherty* v. *Hope*, 3 Denio, 594.)

*A. J. Vanderpoel* for respondent.   There was no unlawful delegation of power by the commissioners of Central park, under the resolution of May 2, 1871. (*Ruggles* v. *Collier*, 43 Mo. 395 ; *Hitchcock* v. *Galveston*, 96 U. S. 341.)   The departments of public parks and public works had authority to make the improvement. (Laws 1865, chap. 565, §§ 1, 2, 4, 8 ; Laws 1866, chap. 367, p. 818.)   The corporation is entitled to the benefit of presumptions which the law makes in its favor, where the acts of public officers are sought to be annulled to its injury. (*Matter of Williamson*, 3 Hun, 65, 68 ; *Matter of Anderson*, 60 N. Y. 457 ; *Matter of Ingraham*, 64 id. 311 ; *Matter of Burke*, 62 id. 229.)   There being no fact of fraud stated in the petition, the court is limited to the question of " substantial error," by which the petitioner has been aggrieved. (Laws of 1874, chap. 312, 313, p. 366, §§ 1, 7 ; *Matter of Zborowski*, 68 N. Y. 104 ; *Matter of Prot. Ep. Church*, 75 id. 324, 328 ; *Matter of Em. Ind. Sav. Bk.*, id. 388, 394; *Matter of Rhinelander*, 68 id. 108.)   The department of public parks had lawful authority to make the improvement by day's work. (Laws of 1866, chap. 367, § 7 ; *Green* v. *The*

*Mayor*, 60 N. Y. 303; Laws of 1873, chap. 335, § 91.) The department of public works acquired jurisdiction of the improvement as the successor, and with all the powers of the department of public parks by statute. (Laws of 1872, § 7, chap. 872; Charter of 1873, § 73.) The work in question being the first improvement of the kind upon that part of the avenue, no petition was requisite. (*Matter of Bassford*, 50 N. Y. 512.) The determination of the amounts of assessable benefit is peculiarly the province of the assessors, and will not be reviewed. (*Matter of Eager*, 46 N. Y. 109.) The rule as to awarding damages to owners for land dedicated as streets, whose lots front thereon, is that nominal damages be awarded. (*Matter of Opening One Hundred and Fifty-sixth street*, N.Y. G. T., May, 1879; *Wyman v. The Mayor*, 11 Wend. 486; *Matter of Seventeenth St.*, 1 id. 262.) In assessing the benefits to be derived from opening a street, the commissioners should assume that the established plan of streets, etc., is to be carried out. (*Matter of Twenty-sixth St.*, 12 Wend. 203.) As there is no charge of fraud in the petition, and no evidence to show fraud; in order to find it here, the court will have to presume it, which the law does not tolerate. (*Matter of Bassford*, 50 N. Y. 504; *Matter of Willett*, 70 id. 490.) Extravagant cost of the work is not sufficient of itself to constitute a fraud and to vacate an assessment on that ground. (*Kingsley v. City of Brooklyn*, 78 N. Y. 200–215.) Assessments of this kind, made for the purpose of charging improvements of the public streets upon the property actually benefited thereby, ought not to be shifted from such property to the shoulders of tax payers for light or trivial reasons. (*Phillips v. The Mayor*, 2 Hun, 215; Laws of 1880, p. 798, chap. 550.)

RAPALLO, J. The principal question in this case is whether the commissioners of Central park and the departments of public parks and of public works, as the successors to the powers of such commissioners, were authorized by law to do the work of regulating, grading, curbing, guttering and flagging Tenth avenue north of One Hundred and Fifty-fifth street, or whether the

authority to order this work to be done was vested in the common council. There are various other questions in the case; but if the one stated is determined in favor of the petitioner, it is decisive of this appeal.

There is no question but that the power to order the work was vested in the common council, unless by some statute it was transferred to the commissioners of Central park. The statute relied upon by the respondents as effecting such transfer, is chapter 565 of the Laws of 1865. Other statutes are referred to for the purpose of fortifying the interpretation of that act claimed by the respondent; but the power of the commissioners of Central park, if it existed, must be found in the act of 1865.

When that act was passed, Tenth avenue, as it then was and still is located, had been laid out from Twenty-first street to King's Bridge by commissioners appointed under the act of 1807. This embraces the parts of the avenue upon which the improvements now in question, so far as the petitioner's land is concerned, were made. It had been opened for that distance by order of the common council, and the report of the commissioners of estimate and assessment for such opening had been confirmed in 1838, and the title as far north as One Hundred and Sixtieth street had been thus acquired. Subsequently, and prior to 1850, the avenue had been laid out and opened from One Hundred and Sixtieth street to One Hundred and Ninety-fourth street, and the title had been acquired, in part in like manner and in part by private cession, and the avenue had been worked and improved from time to time by the common council as one of the avenues of the city, and used by the public as such.

In 1860 an act was passed (Laws of 1860, chap. 201) appointing commissioners to lay out streets, avenues, etc., in that part of the city lying north of One Hundred and Fifty-fifth street, and in that act it was provided that nothing therein should authorize the closing of Tenth avenue. This avenue had therefore been laid out and opened, and was one of the recognized and established avenues of the city.

While these commissioners were proceeding with the execution of their powers the act of 1865 was passed, and it now becomes necessary to examine the provisions of that act, to determine whether it conferred upon the Central park commissioners the power of doing the work in question on Tenth avenue.

By the first section of the act, the commissioners of Central park were vested with exclusive power to lay out streets, roads, squares and public places within that part of the city northward of One Hundred and Fifty-fifth street.   By the second section they were empowered to make the necessary surveys, and cause maps to be made from time to time, showing the width, location, grades, etc., of the streets, etc., to be laid out by them, and were directed to file such maps ; and by the third section these maps were made conclusive as to the location, width and grades of the streets, etc., exhibited upon them.   These complete the provisions as to the laying out of streets, etc.   The next section (§ 4) relates to the opening of such streets, etc., and provides that the commissioners, in behalf of the corporation of the city, are authorized to acquire title to all or any of the lands required for the streets, etc., so laid out by them, whenever they shall deem it to the public interest so to do, and for that purpose to make application to the Supreme Court for the appointment of commissioners of estimate and assessment. The proceedings are to conform to the acts relative to opening streets, etc., in the city of New York, and those acts are made applicable to the streets *so laid out* by the Central park commissioners, to the same extent as if such streets had been laid out under the act of 1807.

Sections 5, 6 and 7 relate to the assessment and payment of damages for land taken, and assessments for the expenses of the opening, and section 8 contains the authority claimed for doing the work of regulating, grading and improving the streets, etc.   This is the only section under which such authority can be claimed, and it must therefore be carefully examined.

This section (§ 8) declares that "upon the confirmation of

the report of commissioners of estimate and assessment *appointed pursuant to this act*, as to the streets, roads, public squares and places *so laid out by said commissioners of the Central park*, as herein provided, or as to any portion thereof, or whenever *thereafter* the commissioners of the Central park shall deem it to the public interest so to do, it shall be lawful for the said commissioners of the Central park, from time to time, to cause such of *said streets*, roads, squares or places as they may designate for that purpose, to be regulated, graded and improved as streets or as country roads," etc., *and for that purpose* they are vested with the powers exercised by the corporation as to other streets and roads.

This is the grant of power under which it is claimed that the commissioners of Central park were authorized to regulate, grade and improve the then existing Tenth avenue, above One Hundred and Fifty-fifth street, and the question is whether section 8 was intended to apply to Tenth avenue, or its language is such that it is capable of being so applied.

It is very clear that the power of the Central park commissioners to do the work of regulating, grading and improving streets, etc., within the district described in the act was limited to streets *laid out by them*. Tenth avenue, north of One Hundred and Fifty-fifth street, was not in fact laid out by them for it had been not only laid out, but opened, and adjacent property assessed for such opening, years before the passage of the act of 1865, and the commissioners of the Central park made no change whatever in its location or width. On the map filed by them it appears precisely as it was laid out by the commissioners under the act of 1807. It is contended that by a liberal interpretation of the act of 1865, the adoption of this avenue by the Central park commissioners may be treated as a laying out thereof by them, and that this construction should be put upon it, for the purpose of carrying out the supposed intention of the legislature to place all that part of the city lying north of One Hundred and Fifty-fifth street under the control of the commissioners of the Central park. But in the effort to give this construction to the act, and thus to

extend the power of the commissioners to do the work in question to this avenue, we are encountered with the difficulty that section 8 is so framed that the power to do the work is restricted not only to new streets, etc., *laid out* by the commissioners of the Central park, but to streets *opened* by them under the act; for the power to do the work is given only in respect to streets as to which the report of commissioners of estimate and assessment *appointed under the act of* 1865 has been confirmed.  The language of the section is in substance that *upon the confirmation of such report, as to streets laid out by the commissioners of the Central park,* or at any time *thereafter,* it shall be lawful for them, from time to time, to cause such *of said streets* as they may designate, to be improved, etc.  The confirmation of the report of commissioners of estimate and assessment appointed under the act of 1865, as to a street or avenue, is thus expressly and in the clearest terms made a condition precedent to the attaching of the power of the commissioners of the Central park to do the work of improving such street.  Now as to Tenth avenue this condition was not and could not be complied with.  No commissioners of estimate and assessment were appointed under the act of 1865, for opening Tenth avenue, nor could it be supposed that any report of any such commissioners would ever be confirmed. The condition precedent contained in section 8 so plainly and absolutely confines the power of doing the work in question to new streets *opened,* as well as *laid out,* under the act of 1865, and as to which commissioners of estimate and assessment had been appointed *under that act,* that it is beyond our power, by any construction, to extend it to streets not thus laid out or opened.  The construction claimed by the respondent would require us to totally reject and strike out all the qualifications and conditions expressed in the section, and to read it as saying that it shall be lawful for the commissioners of the Central park to regulate and improve all streets, etc., northward of One Hundred and Fifty-fifth street, by whomsoever laid out or opened, and without the confirmation of the report of commissioners of estimate and assessment appointed

under the act of 1865. Such a manner of construing a statute is not permissible. Effect must be given if possible to every part of the act. The language which limits the power of the Central park commissioners to improve, to streets *laid out by them*, and which requires that the report of commissioners of estimate and assessment *appointed under the act of* 1865, as to the street to be improved, be first confirmed, is perfectly intelligible and capable of being effectuated. It cannot be stricken by us out of the statute.

In view of the fact that Tenth avenue had already been laid out and opened, and improvements made thereon,. and that it was under the charge of the city government, the only rational construction of the section by which effect can be given to its limitations is, that it was not intended to take away from the common council or transfer to the commissioners of the Central park the authority to provide for and direct the regulating, paving and improving of that avenue, but to place under the jurisdiction of such commissioners, for those purposes, only the new streets to be laid out by them and opened under their direction under the act of 1865.

The act of 1865 was a substitute for the act of 1860 (chap. 201), and by section 12 of the act of 1865 the powers of the commissioners under the act of 1860, and all their maps, surveys, etc., were transferred to the commissioners of the Central park. The act of 1860 (chap. 201), as before stated, expressly recognized Tenth avenue as an avenue which had been opened, and prohibited its being closed. When in face of this fact the eighth section of the act of 1865 confined the power of the commissioners of the Central park to do the work of regulating, improving, etc., to streets laid out by them and opened under the act of 1865, it must be assumed that they intended that Tenth avenue should remain, as it had been for many years, under the jurisdiction of the common council, so far as related to its regulation and improvement. The act of 1865 does not, it is true, contain the prohibition against closing Tenth avenue; but it must also be observed that it confers no express power to close it, and so long as it remained .unchanged it cannot be treated as an avenue laid out or opened under the act of 1865.

Chapter 367 of the Laws of 1866 is referred to by the learned counsel for the respondent as supplementing the authority contained in the act of 1865. That act authorizes the laying out and opening of St. Nicholas avenue, and section 7 contains a general provision that with respect to all streets, etc., required by law to be laid out or improved under the direction of the commissioners of the Central park, such commissioners shall possess all the powers possessed by them in respect to Central park and by the corporation of the city and the several departments thereof, etc., in respect to such matters. This provision does not aid the case, for it applies only to improvements duly authorized, and declares the powers of the commissioners in respect to such improvements. It does not give power to make improvements not previously authorized, nor can it justly be construed as intending to add the power to improve, where a mere power to lay out had been previously given. The words are used distributively.

The provision in the same section, that the commissioners may do all work required to be done by them by day's work or by contract, would be material if it were established that the work now in question was work required to be done by them, but it does not affect the main question.

None of the other statutes cited bear upon that question; and I am unable to resist the conclusion that the jurisdiction of providing for and directing the grading, regulating and improving Tenth avenue above One Hundred and Fifty-fifth street never was vested in the commissioners of the Central park, and consequently did not pass to the department of public parks or of public works, as successors to the powers of the commissioners of the Central park, but continued in the common council. It necessarily follows that the objection taken in the petition and proved upon the hearing, that there was no resolution or ordinance of the common council authorizing the work in question, is fatal to the assessment.

The order of the General Term should be reversed and that of the Special Term affirmed, with costs.

MILLER, J. (Dissenting.) The rule is quite well established that in applications of this character, the petitioner must be confined to the specific allegations of fraud or substantial error. (*Matter of Eager*, 46 N. Y. 100; *Matter of Roberts*, 81 N. Y. 62.) Having this rule in view, we will proceed to consider such of the points of the petitioner as are thus presented. The objection that the department of public parks and of public works had not jurisdiction to improve Tenth avenue, as well as the objection that the common council did not direct or order the work, is sufficiently answered by the fact that these departments had full authority to make the improvement by virtue of various acts of the legislature, and particularly under chapter 565 of Laws of 1865, sections 1, 2, 4, 8. The claim of the petitioner that Tenth avenue had been already laid out under chapter 115, Session Laws of 1807, and therefore it was subject to improvement by the corporation only when directed by ordinance and resolution of the common council, is also without merit. The argument of the petitioner's counsel is that at the time of the passage of chapter 565 of the Laws of 1865, Tenth avenue had been laid out, and that the latter act only conferred power to lay out streets, etc., and did not expressly or by implication include the power to alter, amend or otherwise affect these existing streets. This position, we think, cannot be upheld and is inconsistent with the evident purpose of the act of 1865, which was intended to give the entire control of the district north of One Hundred and Fifty-fifth street to the commissioners of the Central park. From the irregular character and unevenness of the surface of the land, the smallness of the population, and other circumstances, it was not adapted for improvement, according to the ordinary and accustomed mode designated for the remainder of the city, and for these reasons was committed to the charge of the Central park commissioners. That such was the intention of the legislature is supported by the construction placed upon chapter 564 of the Laws of 1865, in *Astor* v. *The Mayor* (62 N. Y. 580); which was enacted on the same day as chapter 565, and embraced legislation of a similar character in regard to Sixth avenue;

and it was said that the effect of the enactments was to make the improvements contemplated in connection with the park, and as a part of a system which had been placed under the control of the commissioners.   In that light the act in question should be regarded, and although Tenth avenue had at an early day been laid out, the commissioners were vested with jurisdiction to improve the same to the same extent as other streets within the district, as will be seen by reference to the various sections cited.   Although section 1 speaks of laying out roads, etc., the second section declares, that all the provisions of the act shall be applicable to the streets, etc., exhibited upon the maps, plans or surveys filed, and section 8 makes it lawful upon the confirmation of the report of the commissioners of estimate and assessment as to streets laid out, for the commissioners of the park to cause such of said streets, etc., as they may designate for that purpose to be regulated, graded and improved as streets, etc., as they "may deem for the public interest and may direct," and confers upon them authority for that purpose.   Upon the map of the commissioners filed in 1869, Tenth avenue is exhibited as laid out by them as far as One Hundred and Ninety-fourth street, and they shortly afterward established the grade thereof ; in 1869, laid out a portion ; and in 1874, discontinued another portion.   The work was done upon the grade thus established.   The right of the commissioners to carry out the improvement in question is also recognized by chapter 367 of the Laws of 1866, which affects this district of the city and provides for its immediate connection with the Central park by the new avenue St. Nicholas, and by the seventh section conferred upon the commissioners with respect to the avenue to be laid out, and to that portion of the Seventh avenue lying north of the Central park, "and all streets, avenues, roads and portions of the city required by law to be laid out or improved under the direction of the said commissioners, and the laying out, grading, regulating, sewering, paving and improving the same, all powers, and to perform all the duties now or heretofore possessed, enjoyed or exercised by such commissioners in respect to Central park in

said city, and by the mayor, aldermen and commonalty of the city of New York, and of the several departments of said city, in relation to streets, avenues and similar improvements thereof in other parts of said city." The counsel for the appellant lays some stress upon the words " to lay out " and other phraseology of a similar import, which are used in some of the statutes cited, and it is urged that these words do not include any other act affecting existing streets or avenues. We think such an interpretation, in view of the various provisions of law to which reference has been had and the intention manifested by the legislature to place the park under the control of the commissioners, is too restricted and unauthorized, and that the language employed must be construed to include all which was required to be done to carry into effect the purpose in view.

Even if Tenth avenue had been previously laid out, no reason exists why the park commissioners should not be authorized under the power conferred to do all the acts which were necessary to complete the work under their charge. The authority to "lay out," which is the greater power, would necessarily include the work required for regulating, grading, setting curb, gutter, flagging and superstructure, which were incidental to the power to lay out and essential to the finishing of the work, and it would be inconsistent with the object of the various acts of the legislature to hold that greater power did not comprehend the lesser. The authorities cited to the effect that these words do not affect any existing street or avenue do not sustain this doctrine. *The People ex rel. Lasher* v. *McNeil* (2 N. Y. Sup. Ct. [T. & C.] 140) and *Garretson* v. *Clark* (Hill & Denio, 162) relate to the construction of the highway act, and have no bearing upon a question when the legislative intent is to be gathered from various legislative enactments, as well as the object to be attained thereby. *In the Matter of Emigrant Industrial Savings Bank* (75 N. Y. 388, 391), which is also cited, the question now presented did not arise, and it was held that there was no power to improve streets, except such as were authorized to be laid out, which, it was decided, appeared to be those north of One Hundred and Fifty-fifth

street.   The court was not called upon to decide as to the language of the act in this respect, but as to the extent of territory, and hence no construction was placed upon the words cited, and the remarks of the learned judge do not affect the case considered.   Giving the words referred to a reasonable construction, and regarding the intention of law to place the Central park under the control of the commissioners, they fairly include any thing which is required to be done to carry out the purposes of the legislation to which they related.   Any other or different construction would leave two systems of improvement in operation for this part of the city, which never could have been intended, and is contrary to the manifest purpose in placing the park in the sole charge of the commissioners.   The intention of the law would also be frustrated and set at naught, and the party benefited escape the payment of an honest assessment, receive all the advantages to be derived from the same, and the expense of the improvement be cast upon the overburdened tax payers of the municipality.   They should not thus be shifted from, the property actually benefited to that of the tax payers for light and trivial causes.   The petitioner's counsel does not rely entirely upon the construction of the act of 1865 claimed by him, but also seeks to get rid of and avoid the effect of its provisions by various objections, to the effect, 1st. That it was modified. 2d. That it was superseded and repealed.   3d. That this act, as well as the act of 1867, referred to, was unconstitutional and void.   4th. That the charter of 1870 relegated to the common council the authority to institute or cause the improvement of streets.

We will proceed to examine and consider each of these objections : *First*. The claim that the authority of the park commissioners over the improvement of streets, under chapter 565 of the Laws of 1865, is modified by chapter 581 of the Laws of 1865, by requiring notice to be given to the common council of the necessity of improving a street, and by requiring such body to do the same, cannot be upheld.   The latter act relates " to the Croton aqueduct in the city of New York, and certain streets

in said city," and was intended to change the location of the Croton aqueduct south of Ninety-second street, and connect it with the new reservoir in the park. The aqueduct was in charge of the Croton aqueduct bureau, which also controlled the sewerage and drainage of the city, and connections with the aqueduct were to be laid in the park. The object was to give the commissioners some authority in reference to the improvements which might affect the park, but which were not under the control of the commissioners. The intention of the legislature evidently was to increase the powers of the commissioners, and not to limit or curtail them in the exercise of their authority in reference to the aqueduct. Assuming, however, that the powers of the commissioners were modified, this modification was repealed by the provisions of section 7 of chapter 367 of the Laws of 1866, which is repugnant to the interpretation insisted upon. The claim made is in opposition to the general rule applicable to the construction of statutes and the manifest intention of the respective acts referred to. It also should be noticed that the point presented is not taken in the petition, and no suggestion is made or fact stated showing that notice had been given. The ninth allegation, that it was done without authority, is a conclusion of law and does not cover it.

*Second.* There is, we think, no ground for the claim that the provisions of section 8 of chapter 565, Session Laws of 1865, and of section 7 of chapter 367, Session Laws of 1867, or that the act of 1865, was superseded by chapter 697 of the Laws of 1867. The sixth section of the last-named act, which is relied upon, is restricted in its operation to the district of the city mentioned in the first section of the act, which is that portion of the city which is bounded northerly of the southerly side of One Hundred and Fifty-fifth street, thus leaving the northerly portion subject to the act of 1865 and 1866, and unaffected by the act of 1867. This is a full and complete answer to the objection.

*Third.* The objection that chapter 565, Session Laws of 1865, and chapter 697, Session Laws of 1867, are unconstitutional rests upon the ground that they transfer to the commissioners who

were not elected by the electors nor appointed by the authorities of the city, power confided to the mayor, aldermen and commonalty of the city of New York, and the officers of the corporation in violation of the Constitution as to local officers. The case of *Astor* v. *The Mayor* (*supra*) disposes of this question adversely to the appellant.

*Fourth.* There is no force in the position that the charter of 1870 delegated to the common council the authority to initiate or cause the improvements of all streets in the city of New York. This claim is based upon the language of subdivision 11 of section 21 of the act. The section cited confers upon the common council power to make, modify and repeal ordinances, etc., and prescribes penalties for a violation of the same in the matters and for the purposes specified, and among other things by subdivision 11, "to provide for and regulate the streets, pavements, crosswalks, curb-stones, gutter-stones and sidewalks." By the twelfth article of the act of 1870 (Chap. 170), the department of public parks is given control of the same in the place of the park commissioners, and all provisions of law in regard to the maintenance and government of Central park are made applicable to the department of parks. This is then a later provision of the act in that respect and should control instead of the preceding section. But both of them are consistent with each other. And while the former section may have full scope in many cases it cannot be regarded as rendering the latter inoperative and as a repealing clause of statutes which are distinctly recognized in the government of the park. To hold that the power given by these statutes, which is recognized in the act of 1870, could be repealed without a clause to that effect would be contrary to all ordinary rules of interpretation applicable to the construction of statutes and against the manifest intention of the act. In support of this view, chapter 383 of the Laws of 1870, section 16, expressly provides "that all acts conferring powers and devolving duties upon the board of commissioners of the Central park are transferred to and conferred upon the said department of public parks." It follows that Tenth avenue, which had been improved under the several

acts referred to was laid out, graded, established and improved by the commissioners of the Central park, under the jurisdiction and authority of the department of public parks, until it was transferred to the department of public works in the year 1872. The opinion of the court in the *Matter of Zborowski* (68 N. Y. 88), cited by the appellant's counsel, does not sustain the position contended for, or uphold any rule which is adverse to the views expressed.

In the various statutes which have been cited, there is no provision which deprived the commissioners of the powers exercised by them in carrying out the improvement, and we are unable to discern any want of authority or jurisdiction in levying the assessment complained of. It is insisted that the departments of public parks and works had no authority to dispense with a contract founded upon sealed bids and proposals. The department, as we have seen, succeeded to all the powers and authority of the commissioners of the Central park, and among them was the right to make improvements in their discretion within the park. As to streets and avenues, not strictly within the limits of the park, section 7 of chapter 367 of the Laws of 1866 (*supra*), after conferring adequate authority, as we have seen, upon the commissioners, also declares that "it shall be lawful for the said commissioners to do *all the work required to be done by them by days' work, or by contract, or in such manner as they may deem expedient.*" The charter of 1870 (Chap. 137, § 4), requiring contracts to be advertised, and sealed proposals, and to be let to the lowest bidder, only applies to work done and contracts made or let by authority of the common council. (*Greene* v. *The Mayor*, 60 N. Y. 303.) As this work is not within the provision referred to, such provision can have no application. The work was commenced under the Laws of 1865 and 1866, and three-fourths had been completed before the enactment of the charter of 1873 (Chap. 335, § 91), by which this requirement was extended to all work thereafter done by the city, excepting such as was then in progress, as was "authorized to be done otherwise than by contract." It is also urged that the work

was never authorized by the common council or by the department of public parks. This objection is based upon the ground that the resolution authorizing the work directed the treasurer to take the necessary measures to carry it out. This did not confer upon the treasurer any power to act, except under the supervision and direction of the commissioners, and was not a transfer of their power to him. He was merely an agent or employee to look after the work, and to attend somewhat to its details and carry out their directions, but was not vested with any control over it. It also appears that the resolution referred to was passed in May, 1871, and the work was prosecuted under the department of public works, which, by chapter 872 of the Laws of 1872, became vested with authority and jurisdiction over the park department and had ample power for that purpose. The claim that the cost of the improvement of Tenth avenue is not payable by assessment or assessable, is not well supported, for it is apparent, from the discussion had, ample authority exists for making the assessment. The allegation that the exemption by the assessors of several pieces of land fronting on the avenue, designated as streets, was erroneous, is also unsupported. Conceding that these lands fronting the avenue were laid out by the park commissioners as streets, being so designated on the map, the assessors had a right to say that they were not benefited by the improvement, and for that reason were not assessable. It was for the assessors to determine whether they were benefited, and their decision might be reviewed by the board of revision; but it is not the subject of review in this proceeding. It is the especial province of the assessors to determine the amounts to be assessed upon the different lots, and unless they are shown to have been unequal and unjust, the assessment will not be disturbed, even in a proceeding to review the same. If the apportionment made is not equitable, it is an error of judgment, and not a fraud or an irregularity. (*In re Eager*, 46 N. Y. 109.)

.The only deed introduced in evidence by the petitioner was of his own lots, and there is no proof as to the title of the

streets.   The petition does not show that complaint was made that any portion of the lands laid out as streets had not·been assessed.   The only designation is in the eighth objection, to the effect that many parcels of land fronting on the avenue had been omitted and not made the subject of assessment, or assessed for benefit, although said lots have been greatly benefited.   This is hardly sufficient to call attention to the objection urged, that streets were exempted, and to advise the city authorities of the real character of the objection.   It may also be remarked that the rule as to awarding damages to the owner of lands dedicated as streets when lots front them is, that they should be merely nominal. (*Wyman* v. *The Mayor*, 11 Wend. 486; *Matter of Seventeenth St.*, 1 id. 262.)   The *onus* is on the petitioner to show that the streets were not dedicated.

Another answer to the objection is, that it does not appear that any value was placed upon these lands by the commissioners of taxes and assessments, and it is proved that they were not defined on the tax map of the city, and therefore there was no basis upon which the assessment could be made, and it was unauthorized.   The assessment must follow the valuation made by the commissioners of taxes, and as there was no lawful valuation proved and designated of the "streets" in question, as assessable property, the assessors had no power to make the valuation or to assess the same. (*In re Churchill*, 82 N. Y. 288.)   It is also urged that the amount assessed is not the cost of the work, which is alone assessable.   In reference to this subject, there is a conflict in the evidence, and it certainly is not so strongly preponderating in favor of the petitioner as to authorize a reversal of the proceedings upon that ground.

There is no charge of fraud in the petition, nor does the evidence establish fraud; and it cannot be presumed without proof. (*In re Bassford*, 50 N. Y. 509; *In re Willett*, 70 id. 490.)   Extravagance is not enough to establish fraud.   In the absence of fraud, an assessment should not be vacated without proof of substantial error, by which the petitioner's rights have

been affected.    (See Laws of 1874, chaps. 312, 313, passed on the same day.)

No such error is made to appear, and the order appealed from should be affirmed.

All concur with RAPALLO, J., except MILLER, J., dissenting, and DANFORTH, J., not voting.

Order of General Term reversed, and that of Special Term affirmed.