(8 App. Div. 143)

PEOPLE v. HESS.

(Supreme Court, Appellate Division, Third Department. July 7, 1896.)

1. WITNESS—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT.
     The examining magistrate in a homicide case (one H.) had been counsel for defendant in all his legal matters, and at the time of the examination was his attorney in a pending action. When the examination began, defendant asked H. to be his attorney, to which H. replied that he could not be. Next day defendant sent for H., and said he wanted to talk with him about his case. H. said he could not and would not be his attorney. De-

fendant replied that he did not wish to consult him as counsel,. but to talk to him as a person in whom he had confidence. *Held*, that the communications then made by defendant to H. were not privileged.

2. HOMICIDE—EVIDENCE—CHARACTER OF DECEASED.
  Where no evidence has been given to show that defendant was acting in self-defense, or had been attacked by deceased, it is proper to exclude evidence of the general character of deceased for quarrelsomeness and violence.

Appeal from court of sessions, Greene county.

George W. Hess was indicted for murder in the second degree, and from a judgment entered on a conviction of manslaughter in the first degree he appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Eugene Burlingame and Jacob H. Clute, for appellant.

Edward A. Gifford, Dist. Atty., for the People.

MERWIN, J. The defendant was charged with shooting with a revolver one Hezekiah Bedell on the 16th day of October, 1892, at the hotel of defendant, in West Coxsackie. Bedell died the same day from the effect of the wound. On the trial the defendant, in substance, admitted that he fired the shot, but he claimed that he did it in self-defense, and that was the main issue at the trial. The defendant claimed that he had reasonable ground to apprehend a design on the part of Bedell to do him great personal injury, and that there was imminent danger of such design being accomplished. Pen. Code, § 205. The jury, by their verdict, said that this claim was not established by the evidence. The defendant had at his hotel a clambake on the evening of Saturday, October 15, 1892. This was closed shortly before midnight, and at about that time Bedell was in the barroom, which was in the basement of the hotel, smoking a cigarette, and talking with Brandow and W. H. Hallenbeck, two of defendant's employés. There soon came in Delanoy and Fancher, who were acquaintances of all the parties, and had been there before on that evening. After a little time, Delanoy, without any provocation, and claiming to be in fun, knocked the cigarette out of the mouth or hand of Bedell. This made Bedell angry, and he thereupon struck or slapped Delanoy on the side of the head. Then followed a struggle between Bedell and Delanoy, during which the defendant and Franklin, another employé, came downstairs into the barroom. Defendant told them to stop fighting, or leave, and Bedell replied he would leave when he got ready. The fighting did not stop. Delanoy was down, or partially down, on the side of the room. Franklin and Hallenbeck were trying to restrain Bedell, who was struggling to get loose from them for the purpose, apparently, of either continuing his fight with Delanoy, or, as the defendant says, trying to reach and strike him. About this time defendant took a revolver which he had in the bar, and, as he says, for the purpose of disabling Bedell, and protecting himself from great personal injury, which he believed was imminent, fired at the legs of Bedell. The ball entered

the body of Bedell, in the chest, a little to the left of the median line, and passed downward through the abdomen, and was deposited near the lower end of the spine. Bedell was a young man, about 20 years old, strong, and weighing about 190 pounds. He had no weapon, and his fighting was with his hand or fist. Delanoy had a pistol, and it seems to have been thought at one time that he did the shooting, but that theory was abandoned.

Upon this appeal the defendant claims that materials errors were made by the court in its rulings upon evidence, and in its charge, and also that the defendant should have the benefit of that provision of section 527 of the Code of Criminal Procedure which provides that "the appellate court may order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below."

Upon the trial, one Edwin C. Hallenbeck was called by the people as a witness. He was an attorney, and a justice of the peace. As a magistrate, he, on Sunday, conducted a preliminary examination as to the affray, the coroner being absent from town. Depositions were taken, and the defendant and also Delanoy were placed under arrest. They both asked for counsel, and the proceeding was thereupon adjourned to the following Tuesday, both the parties charged being committed to the custody of the sheriff until that time. On Monday, Hallenbeck saw the defendant in the county jail, and had there a conversation with him, which he was allowed to state, improperly, as the defendant claims, by reason of the provision of the law (Code Civ. Proc. § 835; Code Cr. Proc. § 392), that an attorney "shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment." It appears that Hallenbeck had been the counsel of defendant in all his legal matters from the time defendant came to Coxsackie, in December, 1891, and at the time of the affray was his attorney in relation to a matter against a railroad. At the time the examination began, on Sunday morning, defendant said to Hallenbeck that he wanted him to be his attorney in the case; and Hallenbeck replied that he was the magistrate in the matter, and could not be his attorney in the case. The defendant thereupon sent for other counsel. On Monday, Hallenbeck was at Catskill, and, as he understood it, was sent for by defendant to come and see him at the jail. He went, and defendant wanted to talk with him about his case. Hallenbeck told him he could not and would not be his attorney or counsel in the matter. Defendant replied that there was a matter he did not wish to talk to counsel about, but wished to talk with him (Hallenbeck) because he had confidence in him by reason of his acquaintanceship, and he (Hallenbeck) was a member of the same order that Delanoy was, to whom he wanted to send a communication. Thereupon defendant told Hallenbeck certain things about the shooting which he wished him to tell Delanoy. Hallenbeck did the errand, and reported to defendant the reply of Delanoy. The com-

munication sent to Delanoy, and the interview when the reply was reported to defendant, constitute the evidence claimed to have been improperly admitted. There is no doubt of the materiality of the evidence. Clearly, according to the evidence of Hallenbeck, the relation of attorney and client did not exist between the defendant and Hallenbeck as to the affair then under consideration, and the defendant was distinctly so informed. The fact that as to other matters the relation may have existed does not confer the privilege here, especially when the relation here is distinctly repudiated to the party. In 1 Greenl. Ev. § 244, it is said that the attorney may be examined "when the thing had no reference to the professional employment, though disclosed while the relation of attorney and client subsisted." The Code only includes a communication "in the course of his professional employment." The fact, simply, that the communication is confidential, is not enough. Renihan v. Dennin, 103 N. Y. 579, 9 N. E. 320; Haulenbeek v. McGibbon, 60 Hun, 26, 14 N. Y. Supp. 393; 1 Greenl. Ev. § 244. Communications to a friend are not covered by the statute. People v. Buchanan, 145 N. Y. 1, 39 N. E. 846. In Williams v. Fitch, 18 N. Y. 551, it is said that the communications must be made to the attorney in the course of the professional employment, and relate to the subject of the employment. Whether the communication is privileged is a matter for the court to determine from the facts appearing. Bacon v. Frisbie, 80 N. Y. 394. We are of the opinion that the court did not err in receiving the evidence, or in the denial of the motion to strike it out, made after the evidence of the defendant on the subject was given. It was very apparent that the communications of which evidence was received were not made in the course of any professional employment.

The defendant claims error in the remarks of the court in the charge on the subject of the credibility of the defendant. Speaking of the testimony of the defendant himself, the court said:

"But, of course, the credibility and the effect of the testimony are very much weakened by the fact that Mr. Hess is charged here with a great crime,—that his words constitute his defense."

This, at the close of the charge, was excepted to, and the court then said:

"I will charge the jury that they may look at it as they will, viewing the whole testimony. It is liable to be weakened by it, but the jury must satisfy themselves as to his credibility, the same as any other witness under charges of the kind preferred against him. I charge that, so that there would be no misunderstanding."

The court, also, at the request of the counsel for defendant, in substance, said that the jury are to give the evidence of Mr. Hess such weight as any witness, under the circumstances of this case, would be entitled to. The court, at the commencement of the charge, had used the following language:

"The testimony in this case belongs to you. The evidence—what is the truth of the testimony—belongs to you to decide. It belongs to you to say what is the truth of the testimony. It belongs to you to say which of the witnesses are entitled to credit. It belongs to you to say what part of the

testimony of the witnesses you will accept, and what part you will reject. You can receive a part of the testimony of the witnesses, and you can reject another part that seems to you incredible. You have ample power in all this direction. You are not obliged to receive the testimony, as a whole, of any witness. You can receive that part which seems consistent with truth and the probabilities of the case and the surrounding circumstances, and you can reject that part which seems to be unreasonable, and not consistent with the facts and circumstances of the case. With all this class of work the court cannot materially aid you. We do not assume to judge on those points at all. The law reserves them exclusively for the jury, and I am thankful for it. If, in anything, I may proceed beyond my duty in that respect, I want you to distinctly understand at this point that you are not to be controlled nor influenced in any way by whatever I may say upon the subject of the testimony or the evidence in this case."

"The credibility of any witness may be affected by his interest in the result of an issue, or his relation to the case on trial; and a court does not exceed its duty when it reminds a jury of such a circumstance, leaving its weight for their consideration." People v. Crowley, 102 N. Y. 234, 238, 6 N. E. 384. This the court, in effect, did here. In Hart v. Ryan, 6 N. Y. Supp. 924, it is said, "It is competent for a trial judge to comment upon the evidence, and even express an opinion in respect to the same, if he confides the question of its force and effect to the jury,"—citing Allis v. Leonard, 58 N. Y. 291; People v. O'Neill, 112 N. Y. 355, 19 N. E. 796. If the words excepted to in the present instance were too strong, the error, if any, was cured by what subsequently occurred, within the principle laid down in Greenfield v. People, 85 N. Y. 75. The same may be said of any error in the charge as to the necessity of effort on the part of the defendant to escape. At the request of the defendant the court charged that the defendant was not bound to retreat at all.

The defendant claims error in the court ruling out evidence offered by the defendant as to threats made by the deceased against defendant, and of the reputation of the deceased as a violent and dangerous man. This evidence was offered on the cross-examination of witnesses for the people. "The rule is that, after evidence has been given by a defendant tending to show that the homicide was committed in self-defense, he may follow it by proof of the general reputation of the deceased for quarrelsomeness and violence." People v. Druse, 103 N. Y. 655, 8 N. E. 733, 734. So, as to threats, it is said: "They are, however, inadmissible, unless proof be first given that there was an overt act of attack, and that the defendant, at the time of the collision, was in apparent imminent danger." Whart. Cr. Ev. § 757. When the evidence referred to was offered, the court was of the opinion that, as the case then stood, there was no evidence from which the jury had a right to say that the defendant was acting in self-defense, or had been attacked by the deceased. We think the court did not err in sustaining the objection to the evidence at that stage of the case. The defendant had full opportunity afterwards to present the evidence.

We are referred in a general way to numerous other exceptions, and to some things that occurred where no exception was

taken, as bearing upon the proposition that justice requires that a new trial be granted. We have examined the exceptions. and statements to which our attention is called, and have considered the suggestions presented by the learned counsel for the defendant. We fail to discern any error on the part of the court that calls for a reversal, or any good ground for ordering a new trial. The charge, as a whole, preserved all the rights of the defendant, and called upon the jury to fairly express their judgment upon the evidence.

Upon the facts, the case is strongly against the defendant. At the time of the shooting there were five persons present, besides the defendant and the deceased. These five were all called as witnesses for the people. Three of them were employés of the defendant, and their credibility is not attacked. They were friendly to the defendant. The situation, according to their evidence, very clearly was that the deceased had then no controversy with the defendant; that his quarrel was solely with Delanoy; that he offered no violence to any other but Franklin, and that only for the purpose of avoiding the restraint that Franklin was seeking to impose; that Delanoy was the only one in danger from the violence of the deceased, and the defendant did not claim he did the shooting for the purpose of defending Delanoy. Having in view the evidence of the defendant, and bearing in mind the evidence of the other five who were present, it is difficult to see how the jury could intelligently have found any other verdict than they did, upon the issue presented by the evidence of the defendant. It is our duty to give judgment "without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." Code Cr. Proc. § 542; People v. Dimick, 107 N. Y. 13, 14 N. E. 178. The judgment should be affirmed. All concur.

Judgment of conviction affirmed.