IN THE MATTER OF THE PETITIONS OF LAURA E. EAGER et al., TO VACATE ASSESSMENTS, ETC.

A resolution of the common council, of the city of New York, directed that certain streets be paved with Nicolson pavement, and " that cross-walks be laid or relaid at intersecting streets, under the directions of the Croton aqueduct department."—*Held*, that said resolution did not require a cross-walk at every street intersection; but that the department could omit such as it deemed unnecessary or improper.

Under the provisions of section 38 of the charter of 1857, where an improvement is directed, embracing several kinds of work, which may be performed separately and by different parties, some of which are patented and others not, separate proposals should be invited for that part which is not patented, and for which there can be competition. An advertisement inviting proposals for the work united is defective, and the assessment founded thereon irregular.

It is not error to graduate the contract price for the work, according to the time employed in doing it.

Neither is it error to include in the assessment, the whole amount of the commission to be paid the collector.

An error of judgment upon the part of the commissioners apportioning the sum assessed, cannot be reviewed in proceedings instituted under chapter 338, of the Laws of 1858; that can only be resorted to for the purpose of reviewing frauds or irregularities.

The provision of section 27, chapter 383, of the Laws of 1870, authorizing a deduction from an assessment of the sum erroneously included, is not retroactive, and does not affect proceedings had before the passage of the act.

(Argued June 13th, 1871; decided September 2d, 1871.)

APPEALS by the mayor, etc., of the city of New York, from orders of the late General Term of the first judicial district, affirming orders of Special Term vacating certain assessments, imposed on the property of the petitioners, for paving Irving place, Nineteenth street, and Sixteenth street with Nicolson pavement. (Reported below 58 Barb., 557.)

On the 29th of June, 1868, the following resolution was passed by the common council over the mayor's veto:

"*Resolved*, That Nineteenth street, from Third to Sixth avenue, be paved with Nicolson pavement, and that cross-

walks be laid or relaid at intersecting streets, under the direction of the Croton aqueduct department; and that the accompanying ordinance be adopted."

That ordinance provided, that the work should be done by assessment; proposals were issued for the work under advertisements, which advertisements invited proposals and bids for contracts for Nicolson pavement only.

The only bid received, was from the Nicolson Pavement Company; and a contract was executed between it and the mayor, aldermen and commonalty, in March, 1869.

In June, 1869, the Croton aqueduct board certified to the bureau of assessors, that the contract had been performed and accepted by the board, and the prices and quantities of work; and the assessors proceeded to. estimate the expense of the work upon the property benefited thereby.

In the contract, an allowance was made for each day the work was completed within the contract time. The amount of this allowance was included in the assessment.

Two and one-half per cent, collector's commission upon the whole amount to be collected, was also included.

The assessment was confirmed on the 1st of September, 1869. The proceedings were instituted in February, 1870. On the twenty-third of February, an order of reference to take proof was made. The cases were argued before BRADY, J., on the 20th of April, 1870.

*Richard O'Gorman* and *A. J. Vanderpoel*, for appellant. That defects in the proceedings, not objected to in the petition, cannot be considered. (*Horn's case*, 12 Abb., 124; *Rich's case*, id., 118; *Matter of Keyser*, 10 id., 481; *Miller's case*, 12 id., 121; 1 Hoffman's Laws, 240.) It was no objection, that the Nicolson pavement was a patented article, and excluded competition. (*Astor* v. *The Mayor*, MS.; *Miller's case*, 12 Abb., 121; *Rich's case*, id., 118; *Matter of Babcock*, 23 How., 118; *Horn's case*, 12 Abb., 124; *Bennett's case*, id., 127; *Hay's case*, 14 id., 53; *Lewis* v. *Mayor*, 51 Barb., 82.) The act of 1870 applies to these proceedings. (*Curtis* v.

*Leavitt*, 15 N. Y., 9, 13, 85, 254 ; *In the Matter of Palmer*, 40 id., 561 ; *Litch* v. *Brotherson*, 16 Abb., 384 ; *Butler* v. *Palmer*, 1 Hill, 331 ; *Church* v. *Rhodes*, 6 How. Pr., 281 ; *In the Matter of Beams*, 17 How., 459.)

*A. R. Lawrence, Jr.*, for respondents. That the statutes should be strictly construed. (*Sharp* v. *Speir*, 4 Hill, 76 ; *Sharp* v. *Johnson*, 4 id., 92 ; *In re Blodgett*, MS. opinion, GROVER, J. ; *Matter of Mott*, MS.) The department had no authority, to deviate from the resolution of the common council, and omit the cross-walks. (*Matter of Wood*, 54 Barb., 276 ; see *Smith* v. *City of New York*, 10 N. Y., 508 ; id., 4 Sandf., 222.) The assessments should have been confirmed by the common council. (2 Revised Laws, 1813, p. 407 ; Davies' Laws, etc., 526.) So much of chapter 308, Laws of 1861, as attempts to deprive the common council of this juris-diction, is in conflict with section 16, article 3, of the State Constitution. (*People* v. *Hills*, 35 N. Y., 449 ; *People* v. *O'Brien*, 38 id., 193 ; *People* v. *Com. Highways*, 53 Barb., 170 ; *People* v. *Allen*, 42 N. Y., 419 ; *Gaskin* v. *Meek*, 42 id., 188 ; *Gaskin* v. *Anderson*, 55 Barb., 419 ; *People* v. *Brad-ley*, MS., decided at October Term, 1869.) The act passed April 26, 1870, does not apply to this case. (Laws of 1870, vol. 1, p. 881 ; *Dash* v. *Van Kleeck*, 7 Johns., 477, and cases *infra ; Johnson* v. *Burrell*, 2 Hill, 238, per COWEN, J. ; see also, particularly, *Ely* v. *Holton*, 15 N. Y., 595 ; *Calkins* v. *Calkins*, 3 Barb., 306 ; *Wood* v. *Oakley*, 11 Paige, 400 ; *McManus* v. *Butler*, 49 Barb., 177 ; *People* v. *Hills*, 35 N. Y., 449 ; *People* v. *O'Brien*, 38 id., 193 ; *People* v. *Com. Highways*, 53 Barb., 70 ; and see *People* v. *Allen*, 42 N. Y., 419 ; *Gaskin* v. *Anderson*, 55 Barb., 259 ; *Gaskin* v. *Meek*, 42 N. Y., 188 ; *Bailey* v. *Mayor, etc.*, 7 Hill, 146.)

RAPALLO, J. These proceedings were instituted in the Supreme Court, under the act of 1858 (Laws of 1858, p. 574), for the purpose of vacating assessments upon the property of the respective petitioners, for paving parts of Irving place, Nineteenth street, and Sixteenth with Nicolson pavement.

The resolutions of the common council, under which the several improvements in question were made, were all in the same form and directed, that the streets therein mentioned, " be paved with Nicolson pavement, where not already paved with Belgian pavement, and that crosswalks be laid or re-laid at intersecting streets, under the direction of the Croton aqueduct department, and that an ordinance which followed each of the resolutions be adopted."

The ordinance provided, that the work be done by assessment.

It appears from the proof taken by the petitioners, and upon which the hearing was had at Special Term, that in performing the work directed by these resolutions, stone cross-walks were not laid at all the intersecting streets, embraced within the several areas directed to be paved, but only at those places where the intersecting streets were paved with Belgian or concrete pavement. For instance, Irving place, from Fourteenth to Twentieth streets, is intersected by five streets. Three of these were paved with Belgian or concrete ; but at Sixteenth street and Nineteenth street, which were directed to be paved with Nicolson pavement, there were no cross-walks laid, but the Nicolson pavement was continued over the space where there had previously been cross-walks.

It was proved, on the part of the city, without contradiction, that it was injurious to the Nicolson pavement, to interrupt it at intervals by cross-walks of stone ; and that the contractor was directed, to lay cross-walks parallel to the work, and transversely, at the commencement and termination of the work, but at no other places.

The petitioners claim, that under the resolution of the common council, cross-walks should have been laid at all the intersecting streets ; and that so much of the Nicolson pavement, as covers the spaces where the cross-walks should have been laid was unauthorized, and that the cost of such pavement being embraced in the assessment, vitiates the whole assessment. The first three specifications of alleged irregularities

set forth in the petition, consist of this objection stated in different forms.

The court below seem to have supposed, that the objection was, that the expense of the cross-walks was included in the assessment, though none were laid, and the case was disposed of at General Term on that ground. But such was not the objection, nor was there any allegation or proof that any cross-walks were charged for, which were not laid. The objection made by the petitioners, was to the charge for Nicolson pavement, in those places where it was claimed that there should have been cross-walks.

We do not think, that the terms of the resolution of the common council are so specific in this respect, as to require that cross-walks should be laid at every intersection, whether needed or not. The evidence shows that such cross-walks were rather injurious than beneficial, at those points where the intersecting streets were laid with the Nicolson pavement, and that their cost was nearly three times as much per superficial yard as that of the pavement. Clearly, the petitioners have not been aggrieved or injured by the omission; and unless the language of the resolutions is so clear as not to admit of any other construction, we ought not to hold, that the city was bound to incur this useless additional expense.

The language of the resolutions is, that the street be paved, etc., and cross-walks laid or relaid at intersecting streets, under the direction of the Croton aqueduct department. The resolutions do not say, in terms, that they shall be laid at all the intersections; and in view of the character of the pavement, as shown by the evidence, we think that the resolutions were substantially complied with, by laying cross-walks at those intersections at which, in the judgment of the department, they were necessary or proper. There is no proof that this was not done; and we think, therefore, that the objection, presented by the first three specifications, is untenable.

It is further objected, however, that although cross-walks, as well as pavement, were required by the resolutions, and some were contracted for and laid, and new bridge-stones

furnished and charged for, to amounts exceeding $250 in each case, there was no advertisement for sealed proposals for such cross-walks or bridge-stones, as required by section 38 of the charter of 1857. This objection is presented by the fifth and sixth specifications of the petitions.

The advertisement published, and read in evidence, called for sealed proposals for the construction of Nicolson pavements, in the localities described in the resolutions, and stated that the plans for the works might be seen, and specifications and forms for the bids obtained, on application at the office of the Croton aqueduct board.

The advertisement did not mention cross-walks or bridge-stones, and it is urged that it did not give notice, that such bridge-stones or cross-walks were required; that although they were mentioned in the specifications, in the office of the Croton board, to which attention was invited, yet that there was nothing in the advertisement, to indicate that cross-walks would be embraced in the specifications, or to induce parties to examine them, with the view of bidding for such cross-walks. It might, perhaps, be an answer to this objection, that contractors, acquainted with the business of laying pavements, would know that cross-walks at some points would be a necessary part of the work, and, therefore, that the advertisement for pavement embraced cross-walks, as incidental thereto.

But in this case there is an element which presents a more serious difficulty. It appears that the Nicolson pavement is a patented article, which could be furnished by only one party, and that there was necessarily but one bidder for the contract. The objection taken in the respondent's points, that inasmuch as there can be no competition in such patented articles, the city has no right, under the charter, to contract for them, is not taken in these petitions, and is not properly before us; but the objections which are taken in the petitions, to the want of a sufficient advertisement, for proposals for the cross-walks or bridge stones, ordered by the resolutions, does raise the question whether, where an improve-

ment is ordered by the common council, which embraces several kinds of work, capable of being separately performed by different parties, some of which works are patented and others not patented, separate proposals should not be invited for that part of the work which is not patented, and for which there can be competition.

It seems to us, that the intent of the thirty-eighth section of the charter, cannot be carried into effect without such a separation. Even if we should hold that patented articles may be contracted for by the city, notwithstanding the impossibility of competition, we ought to stop there, and not go to the length of sanctioning a practice, whereby competition may be prevented, by unnecessarily coupling a work not patented, with one which is patented, and advertising for an entire proposal for the whole.

In the former case there is no alternative, between incurring the hazard of abuses, which may result from the absence of competition, and absolutely depriving the public of the benefit of useful improvements and inventions; but in the latter case competition is unnecessarily excluded, as to a portion of the work, and as to that portion, the spirit of the thirty-eighth section completely evaded. We are, therefore, of the opinion, that a fair and substantial compliance with that section requires, that where the work is separable, separate proposals should be invited by advertisement, for that portion which is not the subject of a patent, so that persons other than those controlling the patent may be bidders.

In this respect, the advertisement in the present case was defective. Even if the term pavement be sufficient to embrace the appropriate cross-walks, yet the advertisement did not authorize, any separate proposals for the cross-walks, and no persons but those who had it in their power to propose for the pavement, could be bidders for the cross-walks. By this mode of advertisement, patentees of the pavement, were secured against competition for the cross-walks or bridge stones, as well as for the patented pavement, and were enabled, had they chosen to do so, to charge any price, however

exorbitant, for articles which, under a different mode of advertisement, would have been open to competition. It does not appear, that in this case the contractors availed themselves of the opportunity thus afforded, of taking an undue advantage ; but a system which would open to unscrupulous parties such an avenue to fraud, should not be sanctioned, and is diametrically opposed to the spirit of the thirty-eighth section of the charter.

Our conclusion is, that there was no regular or sufficient advertisement, for proposals for the cross-walks and bridge stones, and that this irregularity invalidated the assessment.

The fourth specification of the petitions, relates to a per diem allowance made to the contractors, pursuant to one of the provisions of the contract, for completing the work in a shorter time than that limited by the contract.

The 38th section of the charter of 1857 provides, that when proposals are advertised for, the terms of the contract shall be settled by the corporation counsel, as an act of preliminary specification to the bid or proposal. Contracts containing specifications, were prepared in accordance with that provision ; and an examination of them, invited by the advertisement, as has already been shown. The bids were therefore made with reference to this provision of the contract; and it was proved, upon the hearing, that such is the usual practice. That the time for completion of the work, is an essential part of the bids ; that when bids are equal in other respects, the party offering to do the work within the shortest time, is treated as the lowest bidder. The daily allowance under each contract for time saved, is precisely equal to the daily expense of inspecting the work ; and the same sum which the city pays to the contractor for shortening the time, it saves in inspectors' fees.

By another stipulation of the same contract, if the prescribed time is exceeded by the contractor, he is bound to pay the inspectors' wages during the excessive time. The time, therefore, within which the work is to be completed, affects its price, and within the bounds fixed by this contract, I can

see no objection, in ordinary cases, to graduating the price to be paid, according to the time allowed for performing the work. This provision for an allowance, it is true, might in the case of a patented article, be used as an instrument of fraud, but that result flows from the inherent difficulties, of applying the competitive system to such cases, and not from the method of adjusting the price. The danger lies in the impossibility of competition, and not in the form of the contract. If we hold that the city may contract for such articles, I do not see that any additional hazard is incurred, by allowing the price to be graduated according to time, as in other cases. It is just as easy for bidders, disposed to take undue advantage, to add to the price demanded, as to the number of days required for performance.

The seventh specification relates, to the charge of commissions, at the rate of two and a half per cent upon the whole amount, payable into the bureau of assessments. This results, in a charge of two and a half per cent, upon the amount expended upon the work, and also of two and a half per cent, upon the commission chargeable upon that sum, and at first sight the charge would seem to be excessive. But on an examination of the statute, I am inclined to the opinion, that it is justified. The act contemplates that where work is done by assessment, the whole expense shall be borne by the property owner, and no part of it by the city. To accomplish this result, the whole of the commission payable to collectors, should be included in the assessment. The commission allowed by the statute for collection, is two and a half per cent, on all items of assessments collected by the bureau. The collectors are not allowed by the statute (see 1 Hoffman's Laws, 240), to retain their commissions and pay the balance into the bureau, but must pay into the bureau the whole amount collected; and on the amounts so paid in, commissions are to be computed and paid monthly, by the comptroller on the requisition of the street commissioner. Under this system, if the two and a half per cent were computed only on the cost of the work, the city would inevitably be the

loser to some extent, for instance: A piece of work costs $4,000 ; a commission of two and a half per cent added to this, would make the whole amount to be assessed $4,100. The collector collects and pays into the bureau the $4,100. He is then entitled by law, to draw out two and a half per cent on the $4,100 paid in; which commission would be not $100, but $102.50. The $2.50 would thus be lost by the city. This result can only be avoided, by the system which was pursued in these cases, of including in the assessment the whole amount of commissions, which the collectors would be authorized to draw.

The eighth and last specification is, that the principle upon which the assessment was apportioned is erroneous, it not being imposed on the several lots, in proportion to the advantage which each derived from the pavement, but in proportion to the frontage.

We do not think, that this is a subject which could be inquired into, in this form of proceeding. If an error has been committed, in not making an equitable apportionment of the sum assessed among the several property owners, it is an error of judgment on the part of the commissioners, and not a fraud or irregularity in the proceedings.

The act of 1858 can only be resorted to, for the purpose of reviewing such frauds or irregularities.

The petitioners have taken the point, that the assessment was not confirmed by the common council, and that the act of 1861, which purports to dispense with such confirmation, is unconstitutional, by reason of not being properly entitled.

We cannot inquire into this objection, for the reason that it is not stated in the petition, and consequently was not passed upon by the court below.

It is claimed on the part of the city, that though there be an irregularity in the assessments, the order setting them aside should be reversed, and a deduction ordered, of the sum erroneously included in the assessment, pursuant to the provisions of the act of April 26, 1870, section 27. (Laws of 1870, p. 903.) That act provides, that if upon the hearing

of proceedings, brought pursuant to the act of 1858, it shall appear that by means of an irregularity, the expense of a local improvement has been unlawfully increased, the judge may order the assessment, upon the lands of the aggrieved party to be modified, by deducting from the assessment thereon, the proper proportion of the excessive expenditure.

The court below held, that this act could not operate on the present proceedings, the hearing thereon having been had before the passage of the act, and the act not being retroactive. We are of the same opinion.

The orders appealed from should be affirmed, with costs.

All concur.

Order affirmed.