## CECILIA B. O'REILLY, RESPONDENT, v. THE CITY OF KINGSTON, APPELLANT.

*Assessment for local improvement — when objections to the validity of an ordinance changing a grade cannot be raised — when the expense of paving may be assessed against owners of lots, in proportion to their frontage — an assessor is not disqualified by being the father of a lot owner — when a railroad using the street need not be assessed.*

This action was brought to restrain the sale of certain premises under an assessment for the cost of paving a street in the city of Kingston, under an ordinance requiring that to be done in conformity with a new grade adopted by the common council by another ordinance passed on the same day. The grade had been practically established as fixed by the ordinance for many years, but no record describing it existed. The greatest change made was by increasing the elevation at one point, eighteen inches from which point it gradually declined to, or nearly to the former grade. The pavement to be laid was to be sixteen inches thick. The action was sought to be sustained upon the ground that no petition for a change of grade had been presented to the common council as required by the city charter.

*Held,* that as the plaintiff had failed to show that the amount of the assessment had been increased by the change of grade, or that her interests were injuriously affected by the change, the relief prayed for should be refused.

The assessment was apportioned among the lot owners in proportion to the frontage of each lot upon the street. Some of the lots had valuable buildings upon them, others had buildings of inferior value, and many were vacant. The charter required the assessors to assess each lot deemed to be benefited "in proportion to the benefits they deem it to receive."

*Held,* that the fact that the lots were assessed in proportion to their frontage did not invalidate the assessment.

It appeared upon the trial that one of the assessors was the father of the owner of one of the lots assessed, and that the same was then occupied by the assessor.

*Held,* that he was not thereby disqualified from acting as an assessor, that the statute (2 R. S., 275, § 2) disqualifying persons from acting in cases in which they are interested only applied to judges of a court and not to administrative officers.

The ordinance directing the pavement excepted that portion of the road-way "occupied by the tracks of" a railroad company, which were laid for a length of 7,000 feet through the portion of the street to be paved. The railroad company, at the request of the city, agreed to and did adapt its tracks to the new grade and paved between them, and it also agreed to pave to the extremity of its ties, which extended four and one-half inches beyond the track on each side. After it had commenced to pave to the extremity of its ties it was stopped by the city engineer, because it was thought that a better result could be produced by having the work done by the city. The cost of paving

to the extremities of the ties was $875. The entire cost of the paving was $27,160.64, of which twenty-five per cent was to be paid by the city and seventy-five per cent was to be assessed upon the owners benefited.

*Held*, that the fact that no portion of the expense of the work was imposed upon the railroad company did not invalidate the assessment.

APPEAL by the defendant from a judgment, entered at the Ulster Circuit upon the trial of this action before the court without a jury.

*William Lounsbery*, for the appellant.

*M. Schoonmaker*, for the respondent.

LANDON, J:

This is an appeal from a judgment adjudging an assessment imposed by the city of Kingston upon two lots of the plaintiff, for the paving of Union avenue in that city, to be void and enjoining the sale of the premises for the collection thereof.

Our examination of the case leads to the conclusion that the judgment ought to be reversed and we proceed to state the reasons:

*First.* The trial court held that the ordinance of the common council, under which the paving of Union avenue was done, was unauthorized and void. This conclusion is reached, because to do the work according to this ordinance involved a change of grade of Union avenue for a portion of the avenue paved. This change of grade was directed by another ordinance adopted by the common council May 29, 1879, the same date as the ordinance authorizing the paving.

The charter of the city (chap. 150, Laws 1872, amended by chap. 429, Laws 1875, § 98), provides that "when the grade of a street has been established and the street graded accordingly, the grade shall not be changed and the street graded according to the changed grade, except upon petition to (*sic*) the owners of a majority of the lineal feet fronting on the part of the street to be graded, nor unless compensation be made to the owners of property injured by the regrading." In this case no such petition was presented.

The first mentioned ordinance directed the paving to conform to the new grade. The grade of the street had been practically established and graded accordingly many years before, but no record describing the grade existed. The assessment was for paving, not

for grading. The restriction upon the power of the common council exists as to changing an established grade, not as to paving a street. If the assessment had been for the grading, the expense would have been clearly unauthorized because incurred without power.

If it had been shown that the expense was, in material part, for the grading upon an unauthorized altered grade, the unlawful would have dragged down the lawful with it, and the whole assessment would have been unauthorized. But the evidence on the part of the defendant tended strongly to show that the change of grade was so slight and was of such a character, that the grading did not form any part of the expense.

The court was requested to find that the change of the grade of the new pavement did not increase the cost of the work, also, that the amount of the assessment upon plaintiff's lot was not increased by any change made in the grade. The request was refused in these words: " Declined, and as I think immaterial." We think the evidence entitled the defendant to both findings and that they were material. The power resided in the common council to pave the street, and as no record of the old established grade existed, and as the surface of the street had become somewhat irregular, it was manifestly proper that the grade should be defined and established, in order that the proper contract could be made for doing the work, and in order also that the work should be properly done. The work to be done was the laying of a pavement sixteen inches thick. It was manifest that sixteen inches of earth would need to be excavated and deposited somewhere, if the old grade was strictly adhered to. The old grade was so nearly level in the part in which the change was made, that the water did not run from it readily. The greatest change made was by increasing the elevation at one point eighteen inches above the former level, and from that point gradually declining to, or nearly to, the former grade. This change obviously made the excavation less, and hence may have made the cost of the work less. The plaintiff does not complain that this change of grade injuriously affected her. The case seems to be within the principle upon which *Moore* v. *The City of Albany* (98 N. Y., 396), was decided. There the city had the power to grade the street, but in doing so it excavated earth from private property along the street where the adjoining land was higher than the grade, so as to conform to the

natural slope, and deposited earth forming the slope of its embankments where the adjoining property was lower than the grade. The Constitution forbids the taking of private property for public use without compensation, and the charge was that such compensation had not been made nor the title acquired, and hence it was urged the city had, without authority, spent its money in part upon private property which it did not own. The court held that the city had the right to grade the street, but as against the owners of the land it had no power to take any of their earth or deposit any upon their lands, but the parties injured must apply for redress if they wanted any. The plaintiff was not one of such parties.

Here the city had title to the street, and the expenditure was on its property. The prohibition against the change of grade was for the protection of the owners of lots fronting upon the changed portion. It was also intended thereby to prevent fickle changes, with an assessment for expenses.

Now, if in addition to its statutory power to pave the street, and its indisputable title to the street, it has the right to keep and maintain the improvement upon the new grade, then within the case last cited the plaintiff, in the absence of any allegation of injury, personal to herself, cannot dispute the legality of the assessment.

The test then is, can the city hold what it has done, as it has done it? Any action to restore the street to its former grade, would without doubt fail, upon the ground that the wrong or injury done was simply technical and not substantial; or if there is any one other than the plaintiff who has been injured, the injury is of such a character that full compensation can be made in damages.

*Second.* The assessment was apportioned among the lot owners in proportion to the frontage of each lot upon the street. Some of the lots have valuable buildings upon them, others inferior buildings and many are still vacant. The charter requires the assessors to assess each lot deemed to be benefited "in proportion to the benefits they deem it to receive." (Sec. 98.) Because the assessment was in proportion to the frontage it is insisted that it is not in proportion to benefit, and therefore wrong in law. This does not follow. The assessment is not directed to be made in proportion to the value of the lots including improvements, but in proportion to the benefits the assessors deem the lot to receive. This improve-

ment was 8,010 feet in length. The lots benefited extended to a greater length. To state a possible case by way of illustration : One lot of 100 feet frontage with valuable improvements may be worth as much as ten vacant lots each of equal frontage. An improved lot may be assessed ten times as much as a vacant lot, and yet within a year the vacant lots may in like manner be improved and then it would be plain that the lots had not been assessed in proportion to benefits. It is a matter resting, by the terms of the charter, in the judgment and discretion of the assessors. (*Matter of Eager*, 46 N. Y., 100; *Matter of Cruger*, 84 id., 619.) Judge COOLEY, in Constitutional Limitations, 507, says: "It has been held competent to make the street a taxing district and assess the expense of the improvement upon the lots in proportion to the frontage. Here is an apportionment by a rule which approximates to what is just, but which like any other rule which can be applied is only an approximation to absolute equality." He cites many cases from different States in support of the proposition. It is obvious that there are cases in which an assessment in proportion to frontage would be as close an approximation to equality as it would be practicable to obtain ; and that in other cases it would result in gross inequality. The plaintiff cites cases in which this inequality is obvious. (*People ex rel. Parker* v. *Jefferson County Ct.*, 55 N. Y., 604; *Clark* v. *Village of Dunkirk*, 12 Hun, 182.) Regard being had to the evidence, we see no reason to doubt that the assessors in making the assessment adopted a rule which, in their judgment, and in fact, apportioned the tax in proportion to benefit.

*Third.* It appeared upon the trial, though the objection was not taken in the complaint, that one of the assessors was the father of the owner of one of the lots assessed, and that the assessor was the occupant of the lot. If the objection is jurisdictional it may be taken now. The objection rests upon the common-law principle that no person should act as a judge in a matter in which he is interested. If the assessor were a judge *eo nomine*, the statute would disqualify him upon the ground of consanguinity and interest. (Code, § 44; 2 R. S., 275, § 2.) But the statute only applies to a judge of a court. (*People* v. *Wheeler*, 21 N. Y., 82; *Foot* v. *Stiles*, 57 id., 399.) In the case first cited the commissioner of highways was brother of the applicant for the discontinuance of the highway.

DENIO, J., said: "A rule which should preclude the officer from acting in all cases, where a relative within the prohibited degree had an individual interest, would, I presume, be found quite inconvenient. Take the case of assessors, for instance; under the rule contended for, no assessor could take part in the valuation of the property of any of his relatives within the ninth degree of consanguinity. * * * To enlarge the rule still further so as to embrace administrative officers requires, in my opinion, an act of the legislature."

In *Foot* v. *Stiles* it was held that a commissioner of highways is not disqualified from acting in the laying out of a highway by the fact that he is owner of the lands through which it is projected. In both cases, while stress is laid upon the fact that there is a distinction between the acts of an administrative officer requiring the exercise of judicial qualities, and the acts of a judge in dispensing justice, the controlling consideration is that the extension of the rule to the acts of the former officer would create great confusion and inconvenience from the liability to unsettle rights supposed to be vested. While the analogy between the cases may not be altogether denied, public policy apparently finds the safer rule, in cases not strictly judicial, in repose.

*Fourth.* The assessment is further objected to because none was laid upon the Kingston and Rondout Railroad Company. The tracks of this railroad lie 7,000 feet in length in the improved street. The ordinance directing the paving excepted that portion of the roadway "occupied by the tracks" of the railroad company. The railroad company adapted its tracks to the improved grade and paved between its tracks. This was done at the request of the city authorities. The railroad company also agreed to pave to the extremity of its ties. Its ties extend four and one-half inches beyond the track on each side. The company began to pave to the extremity of its ties, but the city engineer testified that "it was not good, would not work," and the city did the work up to the outside of the rails in order that a better result might be secured. There does not appear to have been any collusion nor any other motive than to obtain the best result. The cost of this work between the outside of the rails and the extremity of the ties was $875. The entire cost of the entire work to the city was $27,160.64, of which

twenty-five per cent was assessed upon the city at large and seventy-five per cent upon the lot owners benefited.

It is rather a strained construction to hold that because under the circumstances the city paved over the ends and between the ties to the outside of the rails, that it paved a portion of the roadway occupied by the tracks of the railroad company, and thus exceeded its authority. Clearly what it might originally authorize it could subsequently ratify, and its acceptance of the work and confirmation of the assessment may be regarded as such ratification.

That the horse railroad company's property was benefited by the improvement of the street is not found as a fact. It is possible that it may have been injured by a consequent loss of patronage. It was a question to be decided by the assessors. But the company held its franchise subject to the condition that it should keep the track of its road in good repair, free from obstructions, and that it should do and perform all things in reference to the street which may be lawfully required of it by the directors of the village, to whose rights and powers the city succeeded. It does not appear and is not found that the railway company omitted its duties in any of these particulars, except in respect to its omission to make the pavement to the end of its ties. That omission, as before stated, the city has ratified.

The judgment should be reversed, a new trial granted, costs to abide the event.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment reversed, new trial granted, costs to abide event.