O’Connell, J.
The plaintiff herein, a tax-payer of Hamilton county, Ohio, and owning property along the line of the proposed improvement, brings this suit to enjoin the commissioners of Hamilton county from entering into a contract with the United States Wood Preserving Company — they being the lowest bidder — for the improvement of Mitchell avenue in Cincinnati between designated points under certain specifications.
The plaintiff in his petition makes broad and sweeping allegations of fraud and collusion between the successful bidder, *66 the United States Wood Preserving Company, and the board of county commissioners, tbe board of control, the county engineer and the county solicitor.
The petition was filed September 7, 1906, and the trial had, beginning May 23, 1907. Counsel for the plaintiff in his opening statement at the trial entered a disclaimer to an intent to charge any fraud except that constructive fraud which might be considered as arising upon an interpretation of the language of the specifications.
On careful consideration of all the evidence in the case the court is unable to find any evidence whatever on which to base a charge of fraud either actual or constructive.
Two principal claims are made as grounds for plaintiff’s contention that the county commissioners should be permanently enjoined from contracting for any improvement under the specifications complained of:
First. It is claimed that under the wording of Section 5 of the specifications too wide a discretion is lodged in the engineer and commissioners, the language in the section complained of being as follows :
‘ * The right to increase or decrease the quantities or to change the method of construction in any particular is reserved by the engineer, subject to approval by commissioners and board of control.”
Second. It is claimed that the portion of the specifications covering the requirements for the treatment of the wood blocks are, if not in fact yet subtantially, the claims under which one Andries Bevier secured a patent for the treatment of wood blocks, the patent being No. 681032 of date, August 20, 1901. Hence that the specifications call for a patented article which would prevent that competition which the law favors, and the absence of which should render a contract let under such closed specifications void.
In connection with this second claim an objection is urged which partakes of the nature of the first objection urged. The latter part of clause 1 on page 8 of the specifications under the *67 caption of “wood block paving” is objected to. It reads as follows:
“If in the judgment of the county commissioners it is necessary to inspect the blocks while being creosoted, the contractor shall pay all transportation and board of the inspectors employed by the county for the inspection of blocks, and the bid price per square yard for paving shall cover all such expenses. ’ ’
The contention is made that under the elasticity of this requirement the number of inspectors employed might at the caprice of the engineer become a source of unnecessary and burdensome expense.
In answer to this objection may be quoted the testimony of Mr. Jeup, late city engineer of the city of Indianapolis, who testified in behalf of -the plaintiff and 'who stated that such stipulations were inserted in specifications prepared by him for that city and that such stipulations are customary.
The court will not assume that the county commissioners will exercise the right to have the wood inspected at the plant in an oppressive and unreasonable manner. The inspection is a proper and lawful requirement and as all bidders are given the same opportunity the court is unwilling to say that the clause is unreasonable because a definite number of inspectors are not named, and the- actual cost of this item is not definitely stated 'to the bidders.
I will now discuss in their order the objections noted above.
The'specifications call for three sets of proposals: One is for an improvement entirely by granite blocks; the second is for a combination of granite blocks and iron slag; the third is for a combination of granite blocks and wood blocks.
Under the first objection it is urged that the specifications being “approximations” only, in the “combination paving” a very small quantity of one kind of material might be called for and a large quantity of another; thus giving the opportunity for fraud and favoritism to be exercised by the engineer and commissioners. They would have, it is urged under the elastic provisions of this clause, the power to let' a favored contractor use *68 a large quantity of a paving on which he would make a large profit to the exclusion of a paving on which he would have but a small profit, and that the indefiniteness of this item is one of the elements of constructive fraud which is the basis of their action.
In response to this objection let me quote the language of Judge Cooley, one of the most eminent of American jurists, as found in his decision rendered in the case of Attorney-General v. Detroit, 26 Mich., 263, 271. After discussing the use of patented and unpatented articles in street paving, and upholding the right of the city council to select one patented article to the exclusion of another, or of unpatented articles, and speaking of the argument that specifications should be so drawn as to absolutely prohibit and prevent any opportunity for dishonesty on the part of public officials, he says:
“It would be worse than idle for the law to mark out, or for the council to follow, any one unvarying course in these cases. The same course which, under some circumstances, would be manifestly proper and most for the public good, under others would be so plainly detrimental, and place the public so completely at the mercy of interested parties, that it could not be adopted by a body having any liberty of choice without justly subjecting themselves to the charge of corruption. It must therefore be manifest that any inflexible rule which the law should lay down, and which should trust nothing to the integrity, and nothing to the discretion of the council, must necessarily work mischief in many cases, and it would be productive of good, I think, in few cases, if any. ’ ’
There is in these specifications for the paving of Mitchell avenue no such latitude allowed the commissioners or assumed by the commissioners as the plaintiff contends for. The number of square yards in the exclusively granite paving is placed definitely at 22,745 yards. In both of the combination bids the number of square yards of granite is placed at 8,525 and of iron slag blocks and wood blocks respectively at 13,320.
With these amounts stated definitely in the specifications and with contractors submitting bids on each kind of material called for, each bidder basing his estimate on the same quantities to be used, I think it would be a violent presumption to assume that *69 the phrase in item 5, “the right to increase or decrease the cpiantities or change the method of construction is reserved,” is such a clause that thereunder fraud might be attempted, and by reason of this language being present in the specifications the whole improvement should be enjoined. Unless such a clause was inserted the commissioners would be without power to cope with any unforseen emergency which might arise during the progress of the work. Without a scintilla of evidence in the case even indirectly or remotely suggesting fraud on the part of any of the defendants the court is unwilling to find that this clause suggests and invites fraud. The court finds that it confirms in the county commissioners and the engineer that reasonable discretion which the law assumes they shall have.
The facts in the case at bar resemble in many respects the case of Baltimore v. Flack, 64 Atl. Rep., 702, decided by the court of appeals of Maryland October 6, 1906. In that case a-certain board of commissioners placed three sets of paving materials in competition with each other. They awarded the contract to a patented pavement which was not the lowest priced pavement on the bids submitted.,
In the case at bar, .likewise, three sets of paving materials are in competition with each other. But the board of county commissioners in the case at bar awarded the contract to the lowest bidder, submitted on any kind of improvement.
In discussing and approving the acts of the Baltimore commissioners, that court says, at page 710:
“Thus competition was invited and secured both as to materials and as to price, and the contract was awarded to the lowest responsible bidder on the material selected, though there was another bidder whose price was lower on a different material. ’ ’
The question of the discretion to be allowed public officials in determining the method to be pursired in preparing plans for a public improvement is very ably discussed by the court in this case. The same court further considering the question of the abuse of discretion on the part of public boards and the alleged opportunities for favoritism and fraud says:
*70 “When this general proposition [of competitors] is reduced to a concrete one and applied to the subject of paving a public street, it is perfectly obvious that there must be á selection by some one, at some time, of some material before any paving can be done. Now, the choice of the paving material for a particular street, when the question is open as to what material ought to be used, of necessity involves an investigation into the qualities and adaptabilities of each of the suggested materials, and the city officials who are charged with the duty of making the selection, if they act honestly and are not bound by the preferences of property holders or by some positive enactment, must determine, by the exercise of. their judgment founded on comparisons or observation, which of the materials is the more suitable for the locality. * * But it does not follow that a selection of the kind of pavement must be made in advance of the time the bids are called for. The statute has lodged a wide discretion in the commission in this and in other particulars, and when, in selecting material, that body has acted in good faith, and its conduct is untainted with fraud or venality, no judicial tribunal is clothed with jurisdiction to rejudge its conclusions.”
Attention is also called to the holding of our circuit court in the case of Scott v. Hamilton, 7 C. C. — N. S., 493. There we find similar specifications favorably commented on in the -following language:
“After council had determined what materials would be suitable for the particular improvements, the wisdom of receiving bids upon more than one kind is found in the fact that greater competition is thereby secured, and that the relative amount of the respective bids may determine the particular material to be used.
“In answer to the second reason assigned why an injunction should be granted, it maj'- be said that the statute makes no provision whereby the discretion of the board may be controlled by the wish of the abutting owners, and so long as the board acts in good faith its decision controls. ’ ’
In Wood County v. Pargillis, 10 C. C., 376, 387, the court says, after discussing the differences between the legislative, judicial and executive branches of the state government:
“The courts have a right under the statute where officials are proceeding to make an illegal contract to interfere and *71 enjoin. Possibly they have the right to some extent to interfere where there is a gross abuse of power; but we fail to see any allegation in the petition that brings the commissioners within either the equity or statutory jurisdiction of the court in that regard. The commissioners have acted apparently in good faith within the discretion conferred upon them by the statutes. Were we to interfere here, it would simply be opposing our opinion and discretion against the discretion and opinion of the commissioners, and not by the exercise of any jurisdiction conferred upon the court. ’ ’
In the case at bar the court finds from the evidence that the specifications are reasonable, and that-no valid reason has been adduced by the plaintiff why the construction of the improvement .under these specifications should be enjoined. Plaintiff also alleges in his petition that—
“The life of granite paving is from twenty-five to thirty years and is an approved and tried and satisfactory pavement; and that the owners of property abutting on said proposed improvement are unanimously opposed to any improvement thereof other than with granite block paving throughout, and have protested to the said county commissioners against the use of any other material for paving.”
' The' evidence adduced at the trial, however, fails to sustain this allegation; on the contrary, the majority of the protestors against the improvement later petitioned the commissioners to improve the street with wood blocks as contemplated, asserting that their original protests had been made under a misapprehension of the facts.
In the’case of Wood v. Chicago, 135 Ill., 582, an objection was raised ’similar to that raised by the plaintiff in the case at bar. The improvement objected to in that case was being made under the provisions of an ordinance which set forth the specifications under which the improvement was to be made, the ordinance being drawn under a special Illinois statute.
The opinion of the court is as follows:
“As to the second objection to the ordinance, we do not regard the point well taken. The statute, it is true, requires an *72 ordinance, where a local improvement is to be made by special assessment, to specify the nature, character, location and description of the improvement; but the statute, as we understand it, does not require the ordinance to specify in detail the quantity of each article that shall be used in the construction of the work. If it did, but few ordinances could be adopted that would meet the requirements of the statute, for the reason that it would in many cases be impossible to specify in an ordinance accurately, the amount of the different kind of material that should be used. ’ ’
In the Mitchell avenue specifications the county commissioners designated as accurately as they felt warranted the number of yards of wood block and of granite they respectively desired bids on. In that respect they went even further than the Chicago ordinance went. They should not therefore be held to be violating any law when they reserve to themselves the right to modify these estimates should the progress of the work justify such modification.
I will now consider the second claim made for an injunction, to-wit, that the Mitchell avenue specifications are an infringement or counterpart of the claims of the Bevier patent; that no one can bid thereunder but the holders of the patent; that thereby there can be no competition, and hence the specifications should be held to be illegal and void.
While it is impossible to discuss all the cases submitted by counsel in support of their side of this contention, I will take a few of the leading patent cases submitted by counsel and consider them in connection with plaintiff’s claim that these specifications are an infringement of the Bevier patent.
One of the leading cases cited is that of Welsbach Light Co. v. Gas Lamp Co., 87 Fed. Rep., 221. Dr. Welsbach was the inventor of the well-known gas mantle which bears his name. However, it could not come into commercial use because of its fragibility unless some means were devised to protect it in transit.
After much toil and study he produced a preparation of paraffin in which the mantels could be immersed while liquid and on drying secure the necessary rigidity to permit them to be safely transported. On this coating mixture he obtained letters patent. The claim is as follows, page 222:
*73 “The herein-described improvement in strengthening incandescent mantles, consisting in coating the complete mantle with paraffin, or other suitable material substantially as set forth.”
- The Sunlight Incandescent Gas Lamp Company immersed their incandescent mantles in a solution composed chiefly of collodion -with the addition of a small percentage of castor oil and in excess of five per cent. The result produced was the same as that produced by the Welsbach 'immersion, to-wit, page 224: “Such a degree of hardness as to strengthen the mantle or hood for the purpose of preventing breakage in transport and handling, and of such a character that it can afterwards be removed, by burning away, without mechanical destruction to the mantle, and without leaving any residue which would injure the light-giving properties of the_mantle or hood.”
The court upheld the contention of the plaintiff that this collodion solution is included under the words, “paraffin or other suitable material, substantially as set forth. ’ ’
In discussing the reason for so holding the court uses the following languáge, page 224:
“The result of the latter (the Welsbach process) is new, distinct, and strikingly unexpected.' To introduce these new processes in this new art, and -to work out and apply the undeveloped possibilities of this use of paraffin in solution in connection with these earths, so as to place this light within the reach of the general public, was a most meritorious invention. # » * invention of the patent in suit transformed the Welsbach mantle from a laboratory experiment into an article of commerce. That it has successfully overcome the obstacle previously encountered, and has accomplished results quite as important as the original Welsbach invention, is admitted. The evidence as to Welsbach’s understanding of the limitations upon the practical use of his light, and. the graphic illustration-at the hearing herein of the bold and unique treatment of the fragile mantle, and the success of the adaptions employed in producing the desired results, indicate not only the presence of inventive genius, but claim for the invention the rank of a pioneer. For these reasons this patent should not be narrowly interpreted, but should be so construed as to cover a broad *74 range of equivalents. * * * That in every other respect the defendant has appropriated the patented process, appears from his admission. * * * A patentee is not obliged, in his specifications, to state all the known equivalents of the materials used by him. It is the patent as finally issued which the court is to construe, and upon which the patentee must stand. * * The defendant uses a suitable material, known at the date of the invention to have all these properties and characteristics, and has thereby appropriated complainant’s product.”
It will be observed that the facts in the "Welsbach case differ essentially from the facts in the case at bar. The Bevier patent is a process patent wherein are combined the essential elements of two well-known older processes. His invention is very succinctly stated in page 32 of the file wrapper:
“Claim 4 is rejected as simply reciting two old processes, neither invented by applicant, used in conjunction; vulcanizing, followed by a preservative under heat and pressure.”
The merit of Bevier’s process being further explained, however, the claims were subsequently allowed and the patent issued. But in this response of the examiner is contained the distinction between the Bevier case and the Welsbach ease and others which will be referred to hereafter.
Welsbach originated the incandescent mantel. He originated a preparation for preserving them intact while in transit, no other preparations having been known before. It was a pioneer. His originality was protected by the court. The vulcanizing of wood, however, was of common use at the time Bevier made application for his patent. The impregnating of wood with creosote oil was likewise in common use at the time Bevier made application for his patent. His claims were, therefore, properly rejected until the patent office was shown that his impregnation being made under specific degrees of heat and under specific pressure in combination and art being used, certain desirable results could be obtained not obtained in any other way.
The Mitchell avenue specifications do not call for this specific degree of heat, and do not call for the impregnation under *75 pressure called for in the Bevier patent, and hence do not infringe it. It would be extending the doctrine of equivalents too far to hold that any use of these two older processes in combination is an infringement of the Bevier patent, because Bevier was allowed a patent on a particular kind of combination of them.
The leading case in the United States on the subject of the infringement of process patents is that of Tilghman v. Proctor, 102 U. S., 707, Mr. Tilghman had invented a process on which letters patent had been issued “whereby free fat acids and glycerine were obtained from fatty bodies by the action of water at a high temperature and pressure.”
On page 721 the court say:
“lie patented the process of ‘manufacturing fat acids and glycerine from fatty bodies by the action of water at a high temperature and pressure.’ Had the process been known and used before', and not been Tilghman’s invention, he could not then have claimed anything more than the particular apparatus described in his patent; but being the inventor of the process, as we are satisfied was the fact, he was entitled to claim it in the manner he did.”
On page 728, quoting Chief Justice Taney in the case of O’Reilly v. Morse, 56 U. S. (15 How.), 62, 115, 116, the following is given as the summary of the chief justice’s conclusions:
“Anyone may lawfully accomplish the same end without infringing the patent, if he’uses'means substantially different from those described.” (Page 119.)
Tilghman originated the idea. Welsbach originated an idea. Bevier combined two older well-known processes in a way to obtain certain desired results. He did not originate either idea contained in those processes. He merely combined them in a certain way.
The defendants, the Procter' & Gamble Company, were enjoined ' from using apparatus and agencies different in form from Tilghman’s but carrying on the same process. The result arrived at was the same in both cases, “the manufacturing of fat acids and glycerine from fatty bodies by the action of water *76 at a high temperature and pressure.” But the result of the specifications for the improvement of Mitchell avenue produce a different wood block from that produced under the Bevier patent. They do not call for a block similar to that produced under the Bevier patent.
The Procter & Gamble Company, the defendants, also used a small percentage of lime as an admixture to the mineral to be converted in order to hasten the operation and allow a lower degree of temperature to be used. “Yet this process is included in their operation, and forms the basis of it.” “It is idle, therefore, to say that they do not infringe Tilghman’s patent.” “The introduction of an improvement gives no title to use thfe primary invention upon which the improvement is based.”
The specifications for Mitchell avenue do not presume to be an improvement on Bevier’s process but they are as a matter of fact an essentially different process.
The defendants, the Procter & Gamble Company, claimed they used a lower degree of heat but the court says, “the precise degree of heat is not of the essence of the patent.” However, in the Bevier ease, it appears to be essentially of the essence of the patent, because only under a certain degree of heat under pressure are certain elements expelled from the wood or rendered into a proper condition and made suitable for the absorption of his ingreditents under the subsequently applied heat and pressure.
The Supreme Court noted further that the appropriation of the Tilghman. idea by the Procter & Gamble Company was palpable. ‘ ‘ The defendants first took a license from the patentee and under it and under his directions erected substantially the same apparatus which they are yet using.
The plaintiff in the case at bar claims further that if the terms of the Mitchell avenue specifications are not in fact the counterpart of claim 4 of the Bevier patent, yet under the doctrine of equivalents they substantially infringe it.
The doctrine of equivalents and the real meaning to be applied to the words “substantially as described” is set forth in the" *77 case of Hobbs v. Beach, 180 U. S., 383. At page 399 of the opinion the court says:
“While the words ‘substantially as described or set forth’ are not absolutely meaningless, they do not limit the patentee to the exact mechanism described in his specification, or prevent recovery against infringers who have adopted mechanical equivalents for such mechanism. In determining the range of such equivalents much depends upon the question whether the machine is a primary one, or whether the patent covers some novel feature introduced into an old machine. It is difficult to say exactly what effect should be given to these words.”
The court then quotes approvingly a former decision given in the case of. Morley Sewing Mach. Co. v. Lancaster, 129 U. S., 263, 273, as follows:
“Where an invitation is one of a primary character, and the mechanical functions performed by the machine are, as a whole, entirely new, all subsequent machines which employ substantially the same means to accomplish the same result are infringements. ’ ’
Here again in both of these cases the court makes prominent the originality or primary character of the invention. By implication they very broadly hold, especially in the case of Hobbs v. Beach, supra, that where as in the Bevier patent the ideas or processes are old, but that a peculiar combination will produce certain results, then the terms “substantially as described” should be strictly construed.
This same feature of originality is again made prominent in the case of Royer v. Coupe, 146 U. S., 524, 530, where the court holds that, where the claim is made that an infringement of a combination, process is had, “it must be shown that the defendant used all the different steps of that process or there could be ■no infringement. ’ ’
On pages 530 and 531 we find the following extracts from Royer v. Manufacturing Co., 20 Fed. Rep., 853, quoted with approval:
“If this is a valid patent for a process, it must be limited to the precise, or, certainly, substantial, description which has *78 been given in tbe specifications; and in order to constitute an infringement of that process a person must be shown to have followed substantially the same process, the same mode of reaching the result as is described in the specifications.”
The Supreme Court further says that it agrees with the following statement of the opinion of the circuit court apjoealed from, page 531:
“That if the contention of the counsel for the plaintiff were correct that the plaintiff has invented an entirely new process, which had revolutionized the art of preparing raw hide for belting and other purposes, it might be that the court ought to give that broad construction to the patent which was justified in the case of a foundation patent; but that when, as in this case, all the substantial steps in the process were old, the utmost that the plaintiff was entitled to was protection against those who used, in substance, his precise process.”
Similarly also, in the case of Hammerschlag v. Garrett, 10 Fed. Rep., 479, is upheld the same doctrine of the continuity and entirety of a process patent. At page 481 the court says:
“Construing this claim to be one for a process, as has been done, every successive step enumerated must be regarded as an essential part, and must be employed by the defendants to render them liable to the charge of infringement.”
The Mitchell avenue specifications make no mention of use of a mixture of “creosote, resin and formaldehyde.” They do not use, and make no requirement for the use of, the essential elements of the Bevier patent, to-wit: . The antiseptic materials in combination essential to prolongation of the life of the block as claimed by him as an essential element in his process and to be applied at certain temperatures.
Walker on Patents (4th Ed.), 307, collates the decisions of the Supreme Court of the United States and deduces the following as their uniform holding on the doctrine of essential elements of a combination patent:
“Omission of one ingredient of a combination covered by any claim of a patent, averts any charge of infringement based *79 on that claim. * * * Every part of the combination claimed is conclusively presumed to be material to the combination, and no evidence to the contrary is admissible in any case of alleged infringement. ’ ’
In Eager, In re, 46 N. Y., 100, the court of appeals of New York decided a very interesting ease which, were the facts identical, would have weight in deciding the ease at bar. In that case the common council of the city of New York ordered certain streets.improved with the Nicholson pavement, a patented article. -Coupled with the furnishing and laying of the pavement itself, were to be furnished and laid certain cross walks and bridge stones which were not patented. The court in a very well-considered opinion holds that while it does not pass on the question of the right of the city to use a patented article, yet it would be an injustice to the public to couple with the bid for the patented the bid for the unpatented. In the latter case no one but the controller of' the patent could bid; and he could charge such price for the unpatented as he pleased, and there being no competition the public would be helpless. Whereas, were the unpatented articles to be bid on separately, there would be that competition for that material which would enable the public to get it at a reasonable price.
But as I have already found that the Mitchell avenue specifications do not call for a patented article, this portion of that well-considered opinion is not applicable to the case at bar. In the earlier part of the opinion they uphold the doctrine which is averse to curtailing the- discretion lodged in public officials. The specifications provided that the street “be paved with Nicholson pavement, where not already paved with Belgian pavement, and that cross walks be laid or relaid at intersecting streets, under the direction of the Croton aqueduct department. ’ ’ The court held that the resolution did not require a cross walk at every street intersection; but that the department could omit such as it deemed unnecessary or improper; the court could not interfere with its .discretion.
While the United States Wood Preserving Company is the *80 owner of a patent pertaining to the treatment of wood blocks, yet the Mitchell avenue specifications are broad enough and open enough to admit of such competition that others than the owners of that patent can bid on such work, did submit proposals on that work and can do such work without employing the patented method or using the patented wood blocks.
John C. Healy and Herrlinyer & Southworth, for plaintiff.
Louis A. Ireton and W. M. Schoenle, for defendants.
As the court finds herein from the evidence that the specifications for the improvement of Mitchell avenue do not call for any patented article, the court does not feel called upon to consider the question raised at the trial as to whether or not the act passed by the General Assembly, of Ohio, 98 O. L., 204 (R. S. 1536-2056), wherein municipal corporations are prohibited from using patented articles, is applicable to public improvements undertaken by the county commissioners.
And while the suggestion has been made that as the county commissioners are proceeding under Section 4919, Revised Statutes, the specifications and the method of procedure are more elaborate and detailed than the law requires of such boards, still as the plaintiff does not question the method pursued by the commissioners, but only the validity of certain paragraphs of the specifications drawn up under the method adopted, the court does not feel called upon to enter into a discussion of the powers of commissioners, but has decided only such matters as are raised by the issues joined by the petition and the answer of the defendants.
It is the opinion of the court, therefore, that the application of the plaintiff for an injunction should be denied.